## Mitchell v. Knox County Fiscal Court.

(Decided June 18, 1915.)

## Appeal from Knox Circuit Court.

1. Statutes—Taxation—Levy of State Road Tax—Constitutional Law.—Subsection 4 of Section 4356x of the Kentucky Statutes, edition of 1915 (Acts 1914, p. 443), which levied a State road tax of five cents on each $100.00 valuation of taxable property in the State for the purpose of creating a State road fund, is constitutional.

2. Statutes—Taxation—Levy of State Road Tax—Constitutional Law.—Subsection 4 of Section 4356x of the Kentucky Statutes, edition of 1915 (Acts 1914, p. 443), which levied a State road tax of five cents on each $100.00 valuation of taxable property in the State for the purpose of creating a State road fund, does not violate Section 181a of the Constitution, which provides that the General Assembly shall not impose taxes for the purposes of any county.

3. Statutes—Taxation—Levy of State Road Tax—Constitutional Law.—Section 4356x of the Kentucky Statutes (Acts 1914, p. 441), which authorizes the levy and donation of a tax by the State to the counties of the State for public road purposes, does not violate that portion of Section 177 of the Constitution which forbids the Commonwealth from constructing a railroad or other highway.

4. Statutes—Taxation—Section 4356x, Ky. Stats.—Appropriation of Money Under Statute.—Where a county receives money from the State aid fund under the provisions of Section 4356x of the Kentucky Statutes (Acts 1914, p. 441), to reimburse it for money expended by the county in the construction or reconstruction of public roads and bridges, the money so received becomes the money of the county and may be appropriated and used as other county funds.

5. Statutes—Taxation—Section 4308, Ky. Stats.—Construction—Section 4308 of the Kentucky Statutes, which authorizes the fiscal court of a county to levy a tax not exceeding thirty cents on each $100.00 of taxable property to pay the interest and the principal of county road bonds, violates Section 157a of the Constitution, to the extent that it authorizes the levy of a tax exceeding twenty cents on each $100.00 of taxable property; it is a valid statute, however, to the extent that it authorizes a levy for the purposes indicated to an amount not exceeding twenty cents on each $100.00 of the taxable property in the county.

6. Taxation—Levy of Tax in Aid of Roads—Section 157a, Constitution.—Although Section 157a of the Constitution authorizes a county to levy an additional tax of only twenty cents upon each $100.00 of taxable property in the county for the purposes of paying the interest and the principal of county road bonds, the county may supplement this tax by setting aside, for that purpose, any part of the ordinary county tax of fifty cents upon each $100.00 of taxable property for general purposes.

7. Taxation—Levy of Tax for Payment of Principal and Interest of

Road Bonds—Section 157a, Constitution.—The action of a fiscal court in levying an additional tax of 22½ cents on each $100.00 of taxable property in the county for the purpose of paying the interest and the principal of county road bonds, violated Section 157a of the Constitution, and the collection thereof will be enjoined.

8. Bonds—Section 4307, Ky. Stats:—Redemption of Road Bonds.— Section 4307 of the Kentucky Statutes, providing that county road bonds shall run not less than five years, nor more than thirty years, and be redeemed within that time at the pleasure of the fiscal court, does not mean that the fiscal court must insert a redemption clause into all of its bonds, but merely that it has the power to do so; and that power involves the right to insert the redemption clause in some of the bonds, and to omit it from others.

9. Bonds—Redemption of County Road Bonds.—The qualifying phrase "at the pleasure of the court," found in Section 4307 of the Kentucky Statutes, giving a fiscal court the right to redeem county road bonds "at the pleasure of the court," refers to the time the bonds are issued; the right to redeem must be then reserved, or it cannot be exercised.

GOLDEN & LAY for appellant.

J. F. CATRON, J. M. ROBSION and BLACK, BLACK & OWEN for appellee.

JAMES GARNETT, Attorney General, for the Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This action was instituted by the appellant Mitchell, a taxpayer of Knox County, against the fiscal court of that county and the individual members thereof, to enjoin them from issuing or selling road and bridge bonds of the county, of the face value of $200,000.00, which had been authorized by an election held on March 6th, 1915. This appeal is from an order dismissing the petition.

The election was held pursuant to section 21 of the Act of 1914, which is now section 4307 of the Kentucky Statutes, Carroll's Edition of 1915.

It is conceded the election was regularly called and held, and that the proposition to issue the bonds prevailed, by a vote of 2835 as against 420 in opposition thereto.

Furthermore, by a proper proceeding, the fiscal court of Knox County, acting under the statute of 1914, and by an order duly made and entered on the records of said court, petitioned the State of Kentucky for the

full amount of State aid to which Knox County would be entitled for the construction of roads and bridges under the Act of 1914, and section 157a of the Constitution of Kentucky.

At a session held on March 29th, 1915, the fiscal court of Knox County adopted an elaborate resolution directing the issuance of the bonds; the levying a tax to pay the interest and create a sinking fund; and taking the steps deemed necessary to comply with the law.

Many objections have been raised to this action of the fiscal court; and, in order to correctly understand the situation, a brief statement of the recent legislation upon the subject of public road improvement, at the aid of the State, is necessary.

Section 177 of the present Consitution of Kentucky, adopted in 1891, reads as follows:

"The credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality, or political subdivision of the State; nor shall the Commonwealth become an owner or stockholder in, nor make donation to any company, association or corporation; nor shall the Commonwealth construct a railroad or other highway."

In 1909, however, the people adopted an amendment to the Constitution, which is now known as section 157a, and reads as follows:

"The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes, and any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for said purpose, in such manner as may be provided by law, and when any such indebtedness is incurred by any county said county may levy, in addition to the tax rate allowed under section 157 of the Constitution of Kentucky, an amount not exceeding twenty cents on the one hundred dollars of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness."

Pursuant to the authority thus granted by the constitutional amendment, the legislature of 1914 passed an

elaborate law, creating a system of public state roads, and providing for the construction and maintenance thereof. Acts 1914, page 441. That act contained twenty-six sections, and is now incorporated into the Kentucky Statutes, 1915 Edition, as section 4356x.

The same legislature passed another elaborate statute of eighty-nine sections, defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of county road engineer, and prescribing the duties thereof. Acts 1914, page 338. This last named act is now embraced in the Kentucky Statutes (Ed. 1915), as sections 4287 to 4356s, inclusive.

By sub-section 1 of the first named act (Kentucky Statutes, section 4356x), the commissioner of public roads is given supervision over all public roads and bridges which may be constructed, improved, or maintained, in whole or in part, by the aid of State money; and, by sub-section 3, it is further provided that in order to raise money whereby the State may aid its counties in constructing new public roads, a State road fund was created and set aside in the State treasury, for that purpose.

Sub-section 4 of the act provides for the raising of the State road fund, as follows:

"There shall be levied and collected and paid into the treasury of the State in the same manner prescribed by law for the levying, collecting and paying into the State treasury of other State taxes a special tax to be known as the State road tax. The State road tax shall be set apart in the treasury of the State to the credit of the State road fund to be disbursed and conditioned as is now or may hereafter be prescribed by law for the disbursement of the State road fund for the permanent improvement of public roads of the State in co-operation with the counties. The State road taxes on all real, personal, franchises, and all intangible property not exempt from taxation shall be for the year nineteen hundred and fifteen and every year thereafter five cents on every one hundred dollars valuation thereof."

This State road fund is apportioned between the counties according to the provisions of sub-section 5 of the act, which reads as follows:

"The money hereby set apart in the State treasury to the credit of the State roads fund shall be apportioned among the several counties applying for State aid in the manner hereinafter provided, and the amount

so proportioned shall be based upon the amount of taxes levied and collected therein for the building and reconstruction of public roads, and including the taxes collected from year to year to pay the interest on or create a sinking fund for any bonded indebtedness which may hereafter be created by any county to construct or reconstruct public roads until such county shall have received from the State road fund an amount equal to one-half of the moneys appropriated for building roads by said county, whether the sum thus appropriated be from the sale of bonds or from direct taxation: *Provided,* That said sum shall be expended in constructing or reconstructing public roads under the direction of the commissioner of public roads.

"It is further provided that any county voting bonds and expending the proceeds of same in building public roads under the direction of the commissioner of public roads may, in case the amount thus expended exceeds the proportional amount, said county may be able to secure from the State road fund, then in that event said county shall be entitled to receive from the State road fund in subsequent years such further amounts as will make the total amount received from said fund equal to one-half of the moneys expended by said county under the direction of the commissioner of public roads: *Provided,* That the said county shall expend said funds thus secured in constructing or reconstructing public roads: *Provided, further,* That no one county shall receive in any one year more than two per cent. of the amount collected for State road fund. The amount of taxes upon which this apportionment is based shall include all district and county road taxes and any tolls levied and collected for the construction or reconstruction of any hard surfaced roads of the counties applying for State aid. Any balance remaining in the State road fund after one year's apportionment shall be retained and included in the next year's apportionment.''

By sub-section 6 of the act, it is further provided that if any county shall not avail itself from the aid of the State apportionment, the amount so apportioned shall remain in the treasury of the State to the credit of the State road fund, to be again apportioned among the counties of the State at the next annual apportionment.

1. Taking up the objections in their order, it is first insisted that sub-section 4 of section 4356x, *supra* (Acts

1914, page 443), which levied a State road tax of five cents on each one hundred dollars' valuation of taxable property for the purpose of creating the State road fund, is unconstitutional, because it violates sections 157a and 181a of the Constitution.

It will be remembered that section 177 of the Constitution, above set forth, provided that the credit of the Commonwealth should not be given, pledged or loaned to any person or political sub-division of the State, which, of course, embraced a county.

For the purpose of nullifying that provision of section 177, in so far as it prohibited State aid for public road purposes, section 157a, *supra,* was adopted; and, by the express terms of that constitutional amendment, it was provided that "the credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes," &c.

But, it is insisted that the raising of a State road fund by levying a tax, as was done by sub-section 4 of section 4356x, *supra,* and giving it to a county, in the manner above set forth, is not giving, pledging or loaning the *"credit"* of the Commonwealth to the county, but is the levying of a direct tax, and a gift of the proceeds to the county in violation of section 157a of the Constitution.

The history, however, of sections 177 and 157a of the Constitution, will easily show that the construction contended for is a strained construction, and not warranted by the facts. Previous to the present Constitution, the legislature had unrestricted power to apply its resources and credit in aid of county roads, and other like purposes. The right had, however, been badly abused; and to make such action impossible in the future, section 177 was placed in the organic law of the State. To make it as sweeping as possible, the prohibition was couched in the broadest terms, by providing that "the credit of the Commonwealth shall *not* be given, pledged or loaned to any individual, company, corporation or association, municipality, or public subdivision of the State, nor shall the Commonwealth become an owner or stockholder in, nor make donation to, any company, association or corporation; nor shall the Commonwealth construct a railroad or other highway."

But, when the people came to reverse its policy in so far as it applied to giving the credit of the Commonwealth to its counties for public road purposes, the de-

mands of legislative procedure required that the con-stitutional amendment should use the same terms that had appeared in the original prohibition found in section 177, by saying that the credit of the Commonwealth may be given, pledged or loaned to a county for public road purposes. In all other respects section 177 of the Constitution remained as it was originally drawn; but, in order to take public roads out of the inhibition of section 177, it was necessary to use the apparently awkward expression of saying that the credit of the Commonwealth might be given for public road purposes. This wording of the amendment was necessary because of the wording of section 177 which it annulled, in respect to public roads.

This left the Commonwealth in its relation to public roads and aiding in their construction, precisely as if sections 177 and 157a had never been adopted, and with a free hand in that respect. Section 157a became necessary only because of the pre-existence of section 177; and the prohibitory language of section 177 could only be annulled by using the same terms affirmatively, as was done in section 157a. In the absence of a constitutional prohibition, the legislature may levy any tax it deems proper.

Under this view of the case, it will readily be seen that the term "credit," as used in sections 177 and 157a, can have no effect upon the question before us, and that sub-section 4 of section 4356x violates no provision of the Constitution.

2. Furthermore, in answer to the suggestion that the levying of the tax for the State road fund, *supra*, violates section 181a of the Constitution, which provides that "the General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general law, confer on the proper authorities thereof, the power to assess and collect such taxes," it is obvious that the purpose of this provision of the Constitution was to enable each county to levy, collect and expend its own taxes, free from the control and influence of the General Assembly, and to prevent that body from levying a tax on property located in any county, for county governmental purposes.

But the tax here levied applies to the entire State, and is imposed, collected, and disbursed by the State for State purposes. Constitution, section 171. It is not

levied upon any one county to the exclusion of other counties, or for the benefit of any particular county. It in no way infringes the right of the counties to manage their own fiscal affairs.

3. It is further insisted, however, that the levy and donation of this tax to the counties for public road purposes violates that portion of section 177 of the Constitution which forbids the Commonwealth from constructing a railroad or other highway. This objection overlooks the amendment to the Consti...tion (section 157a), which expressly permits the Commonwealth to give its credit and resources to its counties in aid of their public roads, even though it should be conceded for the sake of the argument, that the acts of the State, in this respect, amount to the construction of a highway. Section 157a being an amendment to the Constitution, necessarily annuls any and all former provisions of that instrument which conflict with it; and since it permits the State to give its aid to the building of county roads, it cannot be said to violate section 177, which was intended to be changed in this respect.

4. In its resolution of March 29th, 1913, above referred to, the fiscal court of Knox County took the following action:

"For the purpose of paying the interest on the indebtedness of $200,000.00 and for the purpose of creating a sinking fund for the payment of the said $200,-000.00 of bonds, it is now ordered by this court that the sum of money paid annually by the Commonwealth of Kentucky to Knox County for reimbursing Knox County for the one-half of the said $200,000.00 spent by Knox County for the construction of roads and bridges, be, and it is now appropriated to be used for the purpose of paying the said interest and creating said sinking fund, and it is further ordered by this court that there shall be levied by the fiscal court of Knox County and appropriated in the year of 1913, and for each subsequent year thereafter until the said interest and said bonds shall have been fully paid and redeemed, an annual tax of not more than 30 cents on each $100.00 of the assessed valuation of the taxable property of every kind and character of Knox County as provided for by the Constitution, amendments thereto, and laws of the Commonwealth for the payment of the interest and redemption of road bonds and indebtedness made and created by the vote of the people as has been done herein, by

Knox County, sufficient, when taken together, with the said sum received by the State annually, as aforesaid, to pay the interest accruing semi-annually, on said bonds and to create a sinking fund to be paid and redeem the said bonds in the way and manner above set out and said State aid and said tax so levied together, are now appropriated and shall be used for the payment of the said interest accruing on said bonds and to create said sinking fund to pay off and redeem the said bonds."

The objection to this action upon the part of the fiscal court raises this important question: Can any part of the State aid fund received by the county, be used to pay either the principal or interest of the county appropriation toward the building of roads and bridges?

It is insisted by the appellant that this cannot be done, and that the action of the fiscal court was void. A determination of this question depends upon the interpretation to be given section 4356x of the Kentucky Statutes, above referred to, and its several sub-sections.

Sub-sections 4 and 5 relating to the tax levy and the appropriation of the State road fund, respectively, have heretofore been set forth in full in this opinion.

Sub-section 10 specifies the way the county may secure the benefit of the State aid fund. It provides that after the fiscal court has decided to construct a road, and has adopted plans, those plans must be submitted to the State Commissioner of Public Roads for his approval or rejection; and he is authorized to approve the construction of roads, provided one-half of the cost of all the roads approved by him in the State does not exceed the sum set apart in the treasury of the State to the credit of the State road fund.

By sub-section 17, the county road engineer is required to keep an itemized account of all work done, and make monthly statements thereof, which shall be filed with the State Commissioner of Public Roads, and if found correct, the account shall be paid in the manner prescribed in the act.

Sub-sections 18 and 19 read as follows:

"18. One-half of the cost of all roads built under the provisions of this act shall be paid out of the moneys set apart in the treasury of the State to the credit of the State road fund and not otherwise appropriated. *It is the purpose of this act that the State shall pay one-half and the county one-half of the cost of all construction or reconstruction of all roads in which State funds*

*are used*. But no portion of the cost of acquiring any necessary land or right-of-way, nor any part of any damages incurred, awarded or paid shall be paid out of the money contributed by the State.

"19. The State Commissioner of Public Roads shall certify from time to time to the State Auditor, when a road is completed to the satisfaction of the Commissioner of Public Roads, the amount to be paid the county, and the State Auditor shall draw his warrant for the amount so certified on the State Treasurer in favor of the treasurer of the county and the State Treasurer shall thereupon pay the same to the treasurer, who shall be the custodian thereof and shall be accountable therefor to the fiscal court of the county."

By sub-section 21, all roads constructed or reconstructed under the provisions of said act shall forever thereafter be county roads, and the duty of keeping the same in repair devolves upon the fiscal court of the county.

From these controlling provisions of the statute, it will be seen that the plan of constructing public roads thereunder plainly contemplates that the State shall pay one-half and the county the other half, of the cost of all public roads constructed or reconstructed under the statute, and that the county is not entitled to receive its appropriation from the State road fund until after it shall have completed the road for which it has asked State aid, to the satisfaction of the State Commissioner of Public Roads, and he shall have certified that fact to the State Auditor, accompanied by a statement of the amount due the county. When that has been done, and not until then, the State Auditor is required to draw his warrant for the amount so certified, in favor of the county treasurer who is to receive it and be accountable therefor to the fiscal court of the county. Subsec. 19.

It will thus be seen that the State pays no part of its State road fund to the county in aid of its public roads until after the particular road for which it is entitled to contribution, has been constructed by the county; but, when the road has been completed under the supervision of the State Commissioner of Public Roads, the county is then entitled to receive from the State road fund one-half of the cost, which it turns into its treasury. The money so received thus becomes the money of the county, and may be appropriated and used as other county funds.

The fact that the money expended by the county in building roads under the State aid plan is derived from the sale of county road bonds, does not affect the question. The basis of the State's contribution is the amount of money expended by the county in the construction of public roads, whether it be raised by ordinary taxation or from the sale of bonds. Sub-section 5, *supra.*

In short, whenever a county constructs a public road under the direction of the State Commissioner of Public Roads and the provisions of the statute, the State will refund to the county one-half of the cost thereof out of its State road fund; and the money thus becoming the property of the county, it may be appropriated and applied as ordinary county funds.

This is a full compliance with sub-section 5, *supra,* which provides that money so appropriated from the State road fund shall be expended in constructing or reconstructing public roads under the direction of the State Commissioner of Public roads, since the road for which the appropriation is made out of the State road fund must have been completed before the State aid appropriation can be paid. This satisfies the requirement of the statute, that all money appropriated from the State road fund must be expended in constructing and reconstructing public roads under the direction of the Commissioner of Public roads.

We are of opinion, therefore, that the fiscal court of Knox County acted within its powers when it applied a portion of the money to be received by it from the State aid fund to the payment of its bonded indebtedness, as set forth in the resolution of March 29, 1915, above quoted.

5. It is next contended that the fiscal court was without authority to levy an annual tax of thirty cents on each $100.00 of the taxable property in the county, for the purpose of paying the interest on the bonds, and creating a sinking fund to pay them, and that it can levy only twenty cents for said purposes, as is provided by section 157a of the Constitution.

Section 4308 of the Kentucky Statutes, reads as follows:

"If bonds are sold to enable the fiscal court to build, construct or reconstruct roads and bridges, the fiscal court shall levy a tax, an amount not exceeding thirty cents on the one hundred dollars of the assessed valuation of said county, which shall be collected as other

county taxation, and appropriated as follows: First, to the payment of the interest on the bonds; Second, the balance to be placed to the credit of a sinking fund for the redemption of said bonds: *Provided,* That any accumulation in the sinking fund may be loaned by the said fiscal court on first mortgage real estate security, on the basis of fifty per cent. of its value, at interest at the legal rate, which shall accrue to the sinking fund, but before such loan shall be made all titles. shall be looked up and papers approved by the county attorney."

It is insisted by appellant that Section 4308, *supra,* is in conflict with section 157a of the Constitution, and therefore void. This objection is well taken· in so far as the tax thus levied exceeds the constitutional limit of 20 cents on each $100.00 of taxable property. The levy is valid, however, to the extent of 20 cents.

· It will be remembered that section 157a of the Constitution provides that· whenever the county incurs an indebtedness for public road purposes, it is authorized to levy, in addition to the tax allowed under section 157 of the Constitution, an amount not exceeding twenty cents on each $100.00 of the taxable property in the county, for the purpose of paying the interest on said indebtedness and providing a sinking fund for its payment. Section 157 of the Constitution limits county taxation to fifty cents on each $100.00 of taxable property, for other than school purposes.

By section 180 of the Constitution, it is further provided, that every resolution passed by any county levying a tax, shall specify distinctly the purpose for which the tax is levied, and that no tax levied and collected for one purpose shall ever be devoted to another purpose.

But, the resolution adopted by the Knox Fiscal Court on March 29th, 1915, heretofore referred to, directs the levy of an annual tax of not more than thirty cents on each $100.00 valuation of property to pay the interest and create a sinking fund to pay these road bonds.

· This resolution, evidently, was adopted in order to· comply with section 159 of the Constitution, which requires, that whenever a county contracts an indebtedness, it must provide for the collection of a tax sufficient to pay the debt within 40 years.

And, while the resolution provides for the further collection of an annual tax of not more than 30 cents, and levies a tax of that amount for 1915, the petition alleges that on April 7th, 1915, the fiscal court levied a tax of 22½ cents on each $100.00 of all the taxable property in the county for the purpose of paying the interest on said road bonds for the year 1915, and to create a sinking fund to discharge the proportional part of said bonds, for that year. This discrepancy as to the amount of the levy for 1915 is, however, immaterial, since if either levy is illegal, the other would be equally so.

The record does not show whether either of these levies is a part of the ordinary levy of 50 cents for general purposes, or is the additional levy authorized by section 157a of the Constitution. If they are parts of the first named levy, they are unquestionably valid. But, since the record fails to show to which class the levies belong, we will assume they belong to the second class and are additional levies under section 157a of the Constitution. When the power to tax is delegated to the fiscal court, the grant must be strictly construed, and beyond the grant the fiscal court has no power to go. Its powers to make appropriations for any purpose must be looked for in the statute. Russell County v. Hill, 164 Ky., 364. On account of the failure of the record to show the character of these levies, we will treat them as being additional to the ordinary 50 cents levy for general purposes.

The petition states that the assessed valuation of the property of Knox County is $4,701,070.70 for the year 1915, and that the levy of 22½ cents on each $100.00 of property will yield only $10,577.41; that the greatest sum that can be levied for the year 1915, or for any subsequent year, for the purpose of paying this interest and creating the sinking fund required by law, is thirty cents on each $100.00, which will realize only $14,103.21; that the first year's interest charge upon said bonds will be $10,000.00; and that in order to pay the bonds as they mature, it will require at least $6,000.00 to be paid into the sinking fund annually, thus requiring at least $16,000.00 annually to pay the interest and create the sinking fund.

From these allegations of the petition it will be seen that the sum required will exceed the sum that Knox County can legally raise by levying an assessment of thirty cents on each $100.00 of taxable property.

But we are not now concerned with the aggregate assessment of the property of Knox County, or the amount of revenue that any particular tax will yield thereon; we have to do only with the legality of the levy which the fiscal court has made. If it had the right to make the levy, and there should still remain a shortage of funds with which to pay the interest and create the necessary sinking fund, that is a matter for the fiscal court to handle; it can, in no way, affect the question of the county's authority.

The situation before us, briefly stated, is this: Under section 157 of the Constitution, the fiscal court may levy a tax of fifty cents on each $100.00 of taxable property, for other than school purposes; and, under section 157a of the Constitution, the fiscal court may, in addition to the tax allowed by section 157, levy a tax not exceeding twenty cents on each $100.00 of taxable property, for the purpose of paying the interest of its road bonds, and providing a sinking fund for their payment.

But, in levying the fifty cents tax for general purposes on each $100.00 under section 157 of the Constitution, the county may, as provided by section 180 of the Constitution, set aside a portion of the levy of fifty cents to be applied to the payment of interest on its road bonds, and the creation of the sinking fund, and thereby supplement its fund raised for that purpose under section 157a. Russell County v. Hill, 164 Ky., 365. Thus the county has authority to levy a tax aggregating seventy cents on the $100.00, exclusive of taxes levied for school purposes.

But, under the authority of section 4308 of the Kentucky Statutes, above quoted, as controlled by section 157a of the Constitution, not more than twenty cents on the $100.00 can be levied for, or appropriated to, the payment of the interest upon road bonds, and the creation of a sinking fund for the redemption of the bonds. And in levying the 50 cents tax for general purposes, it may set aside ten cents, or any part thereof, for road purposes, thereby making a total road tax of thirty cents, or more.

But the supplemental appropriation from the general levy of fifty cents must be set aside for road purposes out of that levy. It cannot be levied jointly with the 20 cents levy authorized by section 157a of the Constitution.

If, in this case, the fiscal court had levied the 20 cents additional road tax authorized by section 157a of the Constitution, and it had then appropriated ten cents of the general levy of fifty cents to public road purposes, there could have been no objection to it; but, in levying a flat tax of thirty cents under section 4308 of the statutes, as was done in this case, it violated the statute and section 157a of the Constitution.

The statute is valid, however, to the extent that it authorizes a levy not exceeding 20 cents.

Section 4308 of the statutes is, therefore, a valid statute, and authorized the fiscal court to levy a tax of 20 cents for public road purposes; but, in making a levy of 22½ cents for those purposes, the action of the fiscal court, in this respect, was invalid.

And, having attempted to levy and collect a tax not warranted by law, injunction lies to prevent its collection.

This does not, however, invalidate the bonds; it only enjoins their sale until the error above indicated shall have been corrected.

The fiscal court may yet, however, by a proper resolution, levy a tax within the limits above indicated, for the purpose of paying the interest upon the bonds and creating the necessary sinking fund.

6. Finally, complaint is made that the order of the fiscal court, in so far as it failed to save to Knox County the right to redeem all of said bonds after five years, at the pleasure of the fiscal court, directly contravenes the provisions of section 4307 of the Kentucky Statutes, and makes the bonds void.

Section 4307, *supra,* provides that bonds of this character shall be "in denominations of not less than $100.00 or more than $1,000.00, to run not less than five years nor more than thirty years, and to be redeemed within that time at the pleasure of the court."

It is insisted by appellant that this provision of the statute requires that all the bonds shall, by their terms, be made redeemable at any time after five years, at the pleasure of the court; while the appellee contends that the fiscal court may make a portion of said bonds so redeemable, while the remaining portion may be so drawn as to be payable only at their maturity; and that in each case the court has expressed its "pleasure" upon the subject.

By the order of the fiscal court in this case, $30,000.00 of these bonds are to become payable and be redeemed in ten years after May 1st 1915; another $30,000.00 thereof in fifteen years from the same date; another $30,-000.00 thereof in twenty years from said date; while $40,000.00 of said bonds are to be due and payable on or after twenty-five years from May 1st, 1915, but at the option of Knox County they may be redeemed any time after twenty years from said date; and another $40,000.00 of said bonds are due and payable thirty years from May 1st, 1915, and, at the option of Knox County, they may be redeemed any time after twenty years from their date.

The resolution of the fiscal court as copied into the record specifies the terms of bonds aggregating only $170,000.00. We assume that the remaining $30,000.00 of bonds were in the first class of bonds referred to in the resolution, and were payable within thirty years, and without the redemption clause. That, however, is not important, since the same principle is equally applicable to all of them.

The purpose of the statute was to leave it optional with the fiscal court to say, when it issued its bonds, whether it would make them redeemable on or before their maturity, or let them run until their full maturity. The qualifying phrase "at the pleasure of the court," refers to the time the bonds are issued. The right to redeem must be then reserved, or it cannot be exercised. The pleasure of the court must be then exercised, and by saying whether it will reserve the right to redeem.

It is well known that bonds which run for a specified long term, without being subject to redemption before their maturity, bring a higher price than bonds that are subject to redemption before their maturity. On the other hand, it is to the interest of the county to have the right to redeem a long term bond at any time before its maturity. Interest rates may fall, or the county may have funds on hand which it can conveniently apply to the payment of its debts. It is, therefore, usual in bonds of this character, to make all or some of them redeemable at some time before their maturity, and after they have run a reasonable length of time. This form tends to make them marketable, at a good price.

Furthermore, the statute does not mean that the fiscal court must insert the redemption clause into all of its bonds, but merely that it has the power to do so;

and that power involves the right to insert the redemption clause in some bonds, and omit it from others.

In this respect the action of the fiscal court satisfied the statute.

We have been requested in the briefs to give our opinion upon some other questions therein suggested, but which are not before us. But, since it is the province of this court to decide cases and not to answer abstract questions, we must decline to speculate as to what the statute may mean when applied to future cases which may never arise.

For the error of the fiscal court in levying an additional tax exceeding the limit prescribed by section 157a of the Constitution, the judgment is reversed, and the action remanded with instructions to set aside the order dismissing the petition, and for further proceedings consistent with this opinion.