## Robertson v. Commercial Security Co., et al.

(Decided February 19, 1913.)

### Appeal from Logan Circuit Court.

1. Bills and Notes—Bona Fide Holder.—The maker of a negotiable promissory note cannot defeat its collection in the hands of a bona fide holder, for value, and without notice, upon the ground that the note was originally obtained by fraud.

2. Bills and Notes—Alteration.—Where the purchaser of an automobile signed a printed contract, the last section thereof being a negotiable promissory note, with a perforated line immediately above the note, and the contract contained a printed statement that the note was to be detached by the payee, the detaching of said note by the payee was authorized by the maker who signed the note, and it did not constitute a material alteration of the note.

BROWDER & BROWDER, for appellant.

W. V. PERRY, R. W. DAVIS and JOHN F. HALL, for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Eugene Robertson, conducts a large department store in Adairville, in Logan County. The appellee, The Commercial Security Co., is an Illinois corporation, doing business in Chicago; the American Manufacturing Company is a Tennessee corporation, engaged in selling automobiles and other commodities, having its home office in Lexington, Tennessee; and the Citizens

Bank, of Lexington, Tennessee, does a banking business in that town. For brevity, said three corporations will be referred to as the "Security Company," the "Manufacturing Company," and the "Bank" respectively.

One of the methods used by the Manufacturing Company in selling its automobiles is what is known as a "contest" scheme or plan, whereby the merchant buys an automobile from the Manufacturing Company and gives to every customer who makes a purchase of goods, a ticket giving him votes in the contest in proportion to his purchase; and whoever receives the greatest number of votes at the end of the contest, gets the automobile. The Manufacturing Company's agent having explained to Robertson the plan of the contest, they finally made a contract by which Robertson bought an automobile, and fifty dollars' worth of other goods, for $950.00 for which he gave his note; and at the same time the Manufacturing Company arranged with the proprieter of the "*Adairville Enterprise*," a weekly newspaper, for the advertising of the proposed contest, which was to begin in August, 1911, and end the middle of February, 1912. By the terms of the contract, the Manufacturing Company was to advertise the contest extensively in the "Enterprise," and by other means, and was to pay for all advertising, Robertson to pay only the purchase price of the automobile. According to the scheme of the contest, every purchaser of a dollar's worth of goods was to be entitled to one hundred votes, and by this method, according to Robertson, it was represented to him that his business would be increased to such an extent as would more than justify the cost of the automobile. Robertson signed a contract, which he says was printed on a sheet of paper about as long as an ordinary mortgage. Near the bottom of this contract there was a perforated line and immediately below that line the contract closed as follows:

"P. O. Adairville, State Ky., 7-18-1911.
"For value received I promise to pay to the order of
"American Manufacturing Company
Nine Hundred Dollars ($900.00) At Lexington, Tennessee, in seven installments payable as follows:

| | Amount | Date Paid |
|---|---|---|
| One month after date | $150.00 | |
| Two months after date | $150.00 | |
| Three months after date | $150.00 | |
| Four months after date | $150.00 | |

Five months after date _____$150.00
Six months after date _____$150.00
Seven months after date _____  50.00

Default in the payment of any installment shall at the option of the payee herein, render the unpaid balance immediately due and payable.

E. ROBERTSON."

The contract contained upon its face this printed statement: "Note to be detached by American Manufacturing Company." Robertson did not retain a copy of the contract, and no copy of it has been filed in the record; but on July 24, 1911, six days after its execution, the Manufacturing Company sold and endorsed Robertson's note, along with a large number of other notes, to the Security Company, the purchase price of all the notes aggregating $29,085.00. The Manufacturing Company shipped the automobile to Robertson, who received it after paying freight charges amounting to $56.96. Robertson alleges that the Manufacturing Company represented to him that the freight charges would not exceed $30.00 or $35.00, and that in paying $56.96 he overpaid the Manufacturing Company to the extent of $21.96, which it has never repaid him. In a few weeks thereafter the first installment of the note fell due, and Robertson notified the Manufacturing Company that if it would reimburse him for the $21.96 excess freight, he would take up the first note according to his contract; but upon the Manufacturing Company's refusal to do this, Robertson refused to pay his note.

The contest sale began about the 1st of August, accompanied by a half page advertisement in the "*Adairville Enterprise.*" About the last of November, however, the advertisement in the "*Enterprise*" was dropped, by reason of some disagreement between its proprietor and the Manufacturing Company, and probably on account of Robertson's failure to pay the first installment of his note. Robertson having declined to pay any further installments upon his note, and the advertisement having been dropped, the contest died a natural death. Robertson withdrew the automobile from the contest, and put it in his basement.

On January 23, 1912, he instituted this action against the Manufacturing Company, the Bank, and the Security Company; and, having alleged that the automobile was the property of the Manufacturing Company, which was

a non-resident corporation, he levied an attachment upon the automobile, and asked the cancellation of the contract, and damages for its breach, upon the ground of fraud. He alleged that by the terms of his contract, of which the note was a part, the Manufacturing Company was to do all the advertising necessary to put on foot and carry out said contest, free of any cost or expense to him, and was to provide for constant and elaborate advertising in the "*Adairville Enterprise,*" throughout the continuance of the contest; but that it failed and refused to advertise said contest after November, 1911, thereby causing a complete failure of the scheme. He further alleged that the Manufacturing Company, the Bank, and the Security Company fraudulently devised said scheme and plan for the purpose of swindling the plaintiff; that all of them knew of the conditions of the contract; and that the Bank subsequently sold the note to the Security Company with full knowledge upon the part of the latter of the conditions of the contract. The Security Company answered, not only denying the fraud and all knowledge of the alleged conditions of the contract, but alleged that it was a bona fide holder, for value, without notice of any of said alleged conditions. On February 8, the Security Company filed a separate action against Robertson upon the note which had been assigned to it by the Manufacturing Company. To this suit Robertson answered making substantially the same charges of fraud and breach of contract as he had alleged in his petition in the first action. By agreement, the two actions were consolidated and tried as one action. Upon the trial the chancellor held that the title to the automobile attached was in Robertson; and, as no other property of the Manufacturing Company had been attached, and it being before the court by constructive service of process only, the court declined to give a personal judgment in favor of Robertson against the Manufacturing Company, and dismissed his petition against it. Upon the issues, however, between Robertson and the Security Company, the chancellor gave the Security Company a judgment upon the note as prayed for; and from that judgment Robertson prosecutes this appeal.

In his brief, appellant rests his ground for a reversal upon these two propositions; (1) he contends there is sufficient proof in the record to show that the Security Company had knowledge of all the conditions of the contract before, and at the time, of its purchase of the note;

and having notice and knowledge of those conditions, the Security Company is not a holder in due course, without notice, and consequently that all defenses that Robertson may have made against the note while in the hands of the Manufacturing Company, are maintainable by him as against the note while in the hands of the Security Company; and, (2) as a matter of law, he contends there was such a destruction or mutilation of the promissory note as to vitiate it even in the hands of a bona fide holder, for value, and without notice of such alteration or destruction.

As to the first proposition, which is one of fact, it is sufficient to say that the proof shows the Security Company bought the note, as a note, in due course of business, for ninety per cent of its face value, and without notice of any of the alleged conditions claimed by Robertson. The officers of the Security Company, as well as the officers of the Bank, have all testified to that effect; and in this they are not contradicted by any one except, perhaps, by Robertson, who knew nothing of the transaction between the Manufacturing Company and the Security Company until after the latter had bought his note.

It is insisted that the fact that Graper, who is President of the Bank, was also a stockholder and Vice-President of the Manufacturing Company, and the attorney and collector of the Security Company in its business in Lexington, Tennessee, sustains the charge of fraud and notice thereof to the Security Company, upon the theory that notice to Graper at a Stockholder and Vice-President of the Manufacturing Company was notice to the Security Company of Chicago, of which Graper was the attorney in Tennessee. We cannot agree that these facts of themselves, justify the conclusion claimed by appellant. Furthermore, it is not necessary to go into the question as to when the knowledge of the attorney is knowledge to his principal, since it has not been shown that the attorney knew of the conditions of the contract.

It is further contended that the admission of one of the officials of the Manufacturing Company that he detached the note from the contract, sustains the charge of fraud against that company. The contract contained the statement that the note was to be detached by the American Manufacturing Company. and as it was a complete note in every respect, it cannot be said that the fraud of the official of the Manufacturing Company in detaching

said note, if there was any fraud in that act, could be imputed to a purchaser of the note, for value, and without notice of the alleged fraud. Appellant knew he was signing a note; and being bound by his contract, he was bound by that provision of it which expressly permitted the Manufacturing Company to detach the note from the contract.

In support of the second proposition, appellant further insists that the purchase of the note by the Security Company was not accompanied by those conditions which would make it a bona fide holder in due course, under sub-section 52, of the Negotiable Instrument Act, which requires, (1) that the instrument be complete and regular upon its face; (2) that the purchaser became the holder of it before it was overdue, and without notice that it had been previously dishonored; (3) that he took it in good faith, and for value; and (4) that at the time it was negotiated to him he had no notice of any infirmity therein. It is insisted that the note as originally signed by Robertson contained all the conditions of the contract above it, and therefore it was not a negotiable instrument. This argument is based upon the idea that the alleged fraudulent tearing off of the note constituted a material alteration thereof. This, however, is not a fair statement of the case, since the note sued on, being regular and complete upon its face, was negotiable. Furthermore, Section 124 of the Negotiable Instrument Law provides that where an alteration is authorized by a party to the instrument, it is not avoided as against that party; and since appellant relies upon his contract, which expressly authorized the payee to detach the note, he must be held to have authorized the act of which he now complains.

Judgment affirmed.