## Gayle v. Greasy Creek Coal & Land Co. et al.

(Decided March 8, 1932.)

252

JAMES M. GILBERT and SLATTERY & DUNLAP for appellant.
F. E. WOOD for appellee Wheeler Boone.
JAMES H. JEFFRIES for appellee Greasy Creek Coal & Land Co.
BAILEY D. BERRY for appellees Phoenix National Bank & Trust Co., W. W. Estill, and Lydia Alexander's executor.
J. W. CAMMACK for appellees minority stockholders of Greasy Creek Coal & Land Co.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal requires a review of the judgment of the circuit court declaring and awarding to Harry E. Murdough, trustee for the use and benefit of the appellee Wheeler Boone, and his associates, a prior and superior lien on certain lands to the rights asserted by the appellant, June W. Gayle.

On March 30, 1920, by a contract executed and delivered by the Greasy Creek Coal & Land Company to June W. Gayle, the Greasy Creek Coal & Land Company, for the consideration of $10,000 cash, and the further consideration of two notes of $2,000 each, due in six and twelve months thereafter, with interest from date, which were executed and delivered by Gayle to the Greasy Creek Coal & Land Company, sold and agreed to convey by deed with covenant of general warranty, to Gayle, 1,000 acres of land and certain timber standing on another tract of land. The writing was

not acknowledged by the Greasy Creek Coal & Land Company before an office authorized to take the acknowledgment of such an instrument, but Gayle caused the writing to be recorded on June 20, 1930, in the office of the county clerk of the county in which the land and timber were situated. The making of the agreement to sell and convey the land and timber and the execution and delivery of the contract were participated in by a majority of the members of the board of directors of the Greasy Creek Coal & Land Company. The attorney of the Greasy Creek Coal & Land Company prepared a deed for the corporation to execute and deliver to Gayle in conformity to its and his contract. The deed was not signed by the corporation or any one for it. In the latter part of 1928, Gayle tendered $4,000 in gold as the amount of the two $2,000 notes to W. W. Estill, president of the Greasy Creek Coal & Land Company, and demanded a deed of conveyance of the property. Estill refused to accept the tender. At the time and place of the execution and delivery of the contract between the parties, and the payment of the $10,000 by Gayle to the corporation, it is claimed by Gayle that its officers represented to him that, if there were any failure to convey to him by a proper deed, the $10,000 would be returned to him, and that both the corporation and its officers in parol pledged themselves to fulfill this agreement. Gayle often requested the officers to execute and deliver to him a deed according to the contract.

The corporation at the time of the making of the contract with Gayle was indebted to the Phoenix National Bank & Trust Company in the sum of $14,120.60, W. R. Estill, $1,606, and W. W. Estill and Lydia Alexander, H. S. Estill, and W. R. Estill in the sum of $5,946.67, and the $51,000 of the corporation's mortgage bonds were held by them as a collateral to secure their respective debts against it.

Thereafter they filed suits to sell the bonds to satisfy their respective debts. The bonds were sold by the master commissioner. When sold by him they were purchased by W. W. Estill, W. R. Estill, Howard Estill, and Lydia Alexander. They, by contract, executed and delivered to Wheeler Boone, sold and delivered to him the $51,000 of bonds and 650 shares of the capital stock of the Greasy Creek Coal & Land Company, for the sum of $22,000. The bonds were secured by a mort-

gage on the property of the Greasy Creek Coal & Land Company, including 1,000 acres and timber which the Greasy Creek Coal & Land Company sold and agreed to convey to Gayle. The Greasy Creek Coal & Land Company had authorized the issuance of 650 shares of the capital stock, of the par value of $100 per share. At the time Gayle and the Greasy Creek Coal & Land Company entered into the contract by which he purchased, and it agreed to convey to him the land and timber, he was informed that it had issued about $50,000 of its bonds, and that the same were secured by mortgage on the property of the corporation. At the time Boone purchased and paid for the mortgage bonds and the stock, he had knowledge of the existence of the contract between Gayle and the Greasy Creek Coal & Land Company, and its provisions. At the time of the making of the contract by Gayle and the Greasy Creek Coal & Land Company, the members of the board of directors assured Gayle that the corporation had a good title to the land. They represented to him there would be no trouble, "that the title would be made good personally by them, they would guarantee it."

It satisfactorily appears that Gayle had such information at the time of the status of the mortgage bonds of the company as would put a reasonably prudent person on inquiry, and, if he had followed up that information, as it was his duty under the circumstances to do, the fact that the creditors of the corporation so held them as collateral security would have been disclosed fully to him. Instead of doing so, accepting his own statements, he relied on the oral assurance and willingness of the members of the board of directors to guarantee to protect him against the bonds. Boone, by his purchase of the mortgage bonds and stock from the individual holders, did not thereby acquire title to the land which was owned by the corporation. It cannot be doubted that, if he had accepted the title to the land from the corporation, with knowledge of the existence and contents of the contract between it and Gayle, he would be estopped from asserting title thereto as an innocent purchaser, for value, without notice, as against Gayle. Jones & Co. v. Cash, 190 Ky. 97, 226 S. W. 352; Benjamin v. Dinwiddie, 226 Ky. 106, 10 S. W. (2d) 620; Roberts v. Kinnaird, 148 Ky. 75, 146 S. W. 35; Union Bank & Trust Co. v. Ponder, 220 Ky. 365, 295 S. W. 140. To properly consider and determine the equities of

Boone and Gayle, it is necessary to observe that this is not a contest between the holders of a junior and senior equity or title from the same vendor. Boone was the purchaser of mortgage bonds and the stock of the corporation, which had been issued by it. The bonds were secured by mortgage on the property of the corporation, including the land and timber which it thereafter sold and agreed to convey by deed to Gayle. The mortgage was recorded in the county of the residence of the corporation and in which the property of the corporation was situated, on the 29th day of October, 1910. Gayle's contract was dated March 30, 1920. Thus it is shown that at the time he accepted the title bond, paid the $10,000 cash, and executed the $2,000 notes to the corporation, he had constructive notice of the existence and provisions of the mortgage which secured the $51,-000 bonds purchased by Boone. Supplementing this fact, according to the testimony of R. C. Ford, at the time of Gayle's acceptance of the title bond, his payment of $10,000 and delivery of the notes, Gayle received actual knowledge that the bonds of the corporation were in the hands of the creditors of the corporation to secure their debts against the corporation. Therefore his acceptance of the title bond was subject to the mortgage. Section 496, Ky. Stats.; Cox v. Guaranty Bank & Trust Co., 199 Ky. 115, 250 S. W. 804. If Boone had purchased and paid for the land covered by Gayle's title bond with knowledge of its existence, in that event Gayle's equity would be superior to Boone's claim of title under such purchase (McGuire v. Whitt, 80 S. W. 474, 25 Ky. Law Rep. 2275), but this he did not do. He acquired title to the mortgage bonds and the recordation of the mortgage antedates Gayle's purchase; therefore Gayle's equity is inferior to the rights of Boone. Simms v. Richardson, 2 Litt. 274; Allen v. Sanders, 2 Bibb. 94; Ligget v. Wall, 2 A. K. Marsh. 149; Cox v. Osburne, 1 A. K. Marsh. 310; McGeorge v. Lytle, 7 Ky. Law Rep. 526; McDowell v. Hollowell, 173 Ky. 543, 191 S. W. 315; Russell v. Tipton, 193 Ky. 305, 235 S. W. 763; Whittaker v. Farmers' National Bank of Somerset, 237 Ky. 596, 36 S. W. (2d) 18; Terry v. Ellsworth, 236 Ky. 54, 32 S. W. (2d) 558; section 496, Ky. Stats.

The title to the bonds purchased by Boone passed either by delivery or by assignment. Section 474, Ky. Stats.; section 3720b-184, Ky. Stats.; Robertson v. Com-

mercial Security Co., 152 Ky. 336, 153 S. W. 450; Haydon v. Eldred, 231 Ky. 298, 21 S. W. (2d) 457; Citizens' Bank v. Johnson County, 182 Ky. 531, 207 S. W. 8; Citizens' Trust & Guarantee Co. v. Hays et al., 167 Ky. 560, 180 S. W. 811. The bonds conform in every respect with the requirements of section 3720b-1, Ky. Stats. and section 3720b-184, supra. The right and title of Boone in respect thereto are controlled by the Negotiable Instrument Law and not by the statutes concerning the recordation of instruments in relation to real estate. The fact that the corporation executed and delivered a title bond, and it was held by Gayle, constitutes no defense to an action on the mortgage bonds.

The appellant relies on the statutes of limitation as a defense against the enforcement of the mortgage, contending that the bonds were barred by the limitation of five years before the commencement of the action, and therefore the mortgage is not enforceable. When the right of action on an instrument which is secured by mortgage is barred, the right to enforce the lien is also barred. Security Inv. Co. v. Harrod Bros., 225 Ky. 12, 7 S. W. (2d) 492; Hamilton v. Wright, 87 S. W. 1093, 27 Ky. Law Rep. 1144; Clift v. Williams, 105 Ky. 559, 49 S. W. 328, 51 S. W. 821, 20 Ky. Law Rep. 1261, 21 Ky. Law Rep. 551; Craddock v. Lee, 61 S. W. 22, 22 Ky. Law Rep. 1651; Rhinehart v. Stacy, 213 Ky. 684, 281 S. W. 809; Arnett v. Salyersville National Bank, 242 Ky. — , 46 S. W. (2d) 124.

It is appellant's contention that the five-year statute of limitation controls Boone's cause of action on the bonds. This contention is predicated upon the theory that the bonds are of that character of negotiable instrument embraced by the language of section 2515. Section 2514 controls actions on bonds of the type of those here involved. Pensacola & A. R. Co. v. Hilton's Trustee, 147 Ky. 553, 144 S. W. 1077.

Boone's answer was filed in March, 1930. He set out the numbers of the bonds owned by him. As they appear in the record, they matured on January 1, 1930, 1931, 1932, 1933, and 1934. They were not barred at the time of the filing of his answer by either the five or fifteen year statutes of limitation.

The mortgage carries a provision authorizing the exercising of an option by the holders of the bonds or

the trustee, wherein it is provided that, if the Greasy Creek Coal & Land Company "defaulted in any of the conditions of the trust deed * * * the principle of the bond may be declared due in the manner and with the same effect as provided in the trust deed and in case of default the trustee, upon receiving a written request, signed by the holders of one-half the amount of the bonds, may declare them due, or upon or after the default of the payment of the interest or on any part of the bonds."

Prior to the sale of the bonds by the master commissioner, the bonds were in the possession of the creditors of the corporation as we have stated. These creditors did not have such right or title to the bonds as would authorize them to exercise the option provided for in the trust deed. Thereafter Boone became the owner of them. No one exercised the option. The bonds, nor the interest coupons thereto attached, did not mature from the mere fact the mortgage contained an option. The exercise thereof as therein provided was necessary and required to precipitate their maturity.

The appellant claims the suits to sell the bonds were collusive and under the domination of Estill. Whether or not the plaintiffs in the action against the corporation to sell the bonds held by them as collateral to secure their respective debts were acting under the domination or influence of each other or of some one else in the filing of their actions is immaterial. The real question is whether each of them had a good cause of action against the corporation for that purpose at the time their respective actions were filed, and, that being granted, it does not lie in the mouth of Gayle to question their motive, or their respective rights to assert it against the corporation. Diuguid v. Roberts (Ky.) 121 S. W. 464; Dickerman v. Northern Trust Co., 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423; American Bank & Trust Co. v. Federal Reserve Bank, 256 U. S. 350, 41 S. Ct. 499, 65 L. Ed. 983. The rule stated supra is applicable and controls Gayle's allegation that the actions by the creditors to sell the bonds respectively held by them as collateral security, were collusive and under the domination of Estill.

It was no legal wrong to file the suits and to obtain judgment to sell the bonds respectively held by them to

258

satisfy their respective debts. Ingraham v. Blevins, 236 Ky. 505, 33 S. W. (2d) 357. There is no evidence establishing fraud in the filing of the suits to sell the bonds, other than the mere fact some of them were filed by some of the officers of the corporation.

The allegations and proof relating to the charge of fraud and misrepresentation by the directors of the corporation at the time and as a part of the negotiations conducted by them for the corporation with Gayle, during the sale to him of the land and timber of the corporation, may be considered, without a determination thereof in this action (Enterprise Foundry & Machine Works v. M. E. Coal Co., 241 Ky. 779, 45 S. W. (2d) 470), sufficient to constitute a cause of action against the directors and their corporation. Such are insufficient to defeat the appellees' right to enforce the mortgage lien on the land of the corporation to secure its bonds.

Wherefore the judgment is affirmed.