## Head et al. v. Oldham Bank & Trust Company.

(Decided May 19, 1933.)

ROBERT T. CROWE and J. BALLARD CLARK for appellants.

H. ELLIOTT NETHERTON and D. E. WOOLDRIDGE for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Alexander Duncan by his will, which was duly admitted to probate on December 18, 1882, made this provision for his daughter, Mrs. Susie Head:

> "To my daughter Sue Head I will one-fourth of my estate after the payment to my wife and funeral expenses to be held by my son Thomas. Duncan in trust for her as her separate estate free from the debts or control of her husband. She is to be charged with Five Thousand Dollars advancement to her and for which I hold her and her husband's receipts. I desire that what she gets by my will to be invested by her Trustee with her consent in such manner as will be to her best interest. The annual rents and profits of which are to be paid to her and whatever there shall be remaining at her death go to her bodily heirs."

Thomas Duncan qualified as trustee for his sister, and, as such, received on the settlement of the estate, under the above provision, $2,000. He lent the money to her husband, W. O. Head, and on December 30, 1885, took from him and his wife a note and mortgage securing it on 118 acres of land, the property of W. O. Head. Head paid the interest on the note to the trustee who paid the money to Mrs. Head. This ran along for many

years. On October 3, 1925, W. O. Head being indebted to the bank in the sum of $3,000, he and his wife executed to it a note therefor, also a mortgage securing the debt on the 118 acres of land and also another tract owned by him of 73 acres. Mrs. Head died on October 18, 1926, and the bank brought this action against W. O. Head and Susie Head's administrator and children to subject the land to the $3,000 note held by the bank. Her representatives set up the prior mortgage executed in 1885, on the 118 acres of land, alleging that the debt was unpaid and praying that they be adjudged a prior lien on this tract. The issues were made up, proof was taken, and on final hearing the circuit court adjudged the bank's debt priority over the mortgage executed in 1885. The representatives of Mrs. Head appeal.

Section 2514, Kentucky Statutes, regulating the time within which actions on written contracts must be brought, was amended on March 29, 1918 (chapter 132), by adding thereto these words:

"And no promise or acknowledgment, or payment of money by any person bound on any bond or obligation for the payment of money secured by a lien shall operate as a prolongation or extension of the time within which such lien may be enforced as against purchasers or creditors, unless the promisor and the holder of the lien before fifteen years after the maturity of the debt, shall enter a memorandum on the margin of the record of the deed or mortgage, attested by the clerk, showing that the debt is extended, and for what time it is extended, and the amount still due thereon."

While the mortgage executed in 1885 was duly recorded, no memorandum on the margin of the record was ever entered showing that the debt was extended or for what time or the amount due thereon, and it is insisted that by reason of this the lien of the mortgage cannot be enforced against the bank.

The rights of the parties turn on whether the bank was a purchaser or creditor within the meaning of the amendment. In American Nat. Bank v. Stark, 246 Ky. 225, 54 S. W. (2d) 906, 907, the court having this precise question before it, thus decided it:

"It will be noted that the 1918 amendment does not invalidate the prolongation of the life of these

lien debts as between the parties. It leaves that situation untouched. Hence it is clear that the Legislature was not aiming at the death of such prolongations unless a record was made of it. This being true, the aim of the Legislature was undoubtedly to require a record of such prolongations, so that those who did not actually know of them could rely on what the records disclosed. It is true that, in most of our recording statutes, the words 'without notice' accompanies the words 'purchaser for value,' but the words 'without notice' seldom accompany the word 'creditors,' and yet it is settled that creditors with notice are subordinate to those who hold prior rights, though not recorded as the statute in question may require. See Swafford's Adm'r v. Asher (Ky.) 105 S. W. 164, 31 Ky. Law Rep. 1338; Cf. Sears v. Cain [242 Ky. 702, 47 S. W. (2d) 513], supra. Thus we see that the fundamental principle back of these recording statutes is to protect bona fide purchasers and creditors without notice. We are of opinion that the 1918 amendment to section 2514 should be construed with this principle in mind and in the light of what the Legislature was undoubtedly seeking to remedy thereby. This being true, and the pleadings either disclosing that the appellant took with actual knowledge of appellees' lien or failing to set up in proper fashion the affirmative defense of bona fide purchaser for value without notice, the court did not err in sustaining appellees' demurrer to appellant's answer and adjudging appellees' lien superior to appellant's conveyance.''

P. S. Head was the president of the bank at the time the $3,000 note and mortgage securing it was executed. He was the brother of W. O. Head. Thomas Duncan, the original trustee, had died some years before and after his death P. S. Head had acted as trustee in his stead. He knew all about the $2,000 note and mortgage securing it and so did the other officers of the bank. The note had previously been deposited in the bank as collateral, and the situation was well known. In fact Mrs. Head objected to signing the mortgage on account of her holding the older mortgage, and the matter was fully understood by all the parties at the time. The bank therefore took with notice of the trust and under the rule above laid down is not protected by the

statute. The circuit court should have adjudged the older mortgage priority under the undisputed proof. Mrs. Head was entitled to the interest as long as she lived, but at her death the principal of the fund descended to her children and their rights were superior to the rights of the bank. Up to the death of Mrs. Head, the interest on the fund should have been collected by the trustee and paid by him to her. But after her death, the trust ceased and the fund passed to her heirs. It is not presumed that the trustee failed to do his duty and the proof is not sufficient to show that he did so fail. Under all the facts no judgment may be rendered in favor of her administrator for interest on the fund before her death; but the remaindermen should recover the principal of the fund with interest from her death and may enforce their lien on the land therefor.

Judgment reversed, and cause remanded for a judgment as above indicated.