

## In re MAY.

No. 751.

District Court, E. D. Kentucky.

May 4, 1935.

J. J. Winn, of Mt. Sterling, Ky., for bankrupt.

W. B. White, of Mt. Sterling, Ky., for Jacobs, objecting creditor.

Grubbs & Grubbs, of Mt. Sterling, Ky., for Mt. Sterling Nat. Bank.

FORD, District Judge.

Among the assets of the estate of the bankrupt, R. E. May, were two tracts of land, one of which contained about 25 acres and the other about 12 acres.

The Mt. Sterling National Bank and Arthur Jacobs are both asserting liens against these two tracts of land. The lands were sold by the trustee with the provision that the liens should attach to the proceeds.

On May 3, 1934, the referee, after hearing proof on the subject, adjudged the lien of the Mt. Sterling National Bank to be prior and superior to the lien of Arthur Jacobs. Jacobs has filed herein his petition for review of the order of the referee, and the matter is now submitted upon his petition.

It appears from the record that the bankrupt R. E. May sold and conveyed the 25-acre tract to one Hayes Scott on March 1, 1920, and in the deed of conveyance a lien was retained in favor of May to secure the sum of $1,833.33 of the purchase price which was evidenced by a promissory note of even date executed by the grantee Hayes Scott.

On March 4, 1919, the bankrupt, R. E. May, sold and conveyed the 12-acre tract in question to James Caywood and retained in the deed a lien in his favor to secure Caywood's note for $875. Shortly thereafter, May assigned and indorsed both lien notes to the Mt. Sterling National Bank. No transfer or assignment of either of them was entered upon the records in the office of the county clerk where the deeds were recorded. Some payments were made on both notes from time to time. The bank still holds both notes; there being a balance remaining unpaid on the first note of $1,499.-33, with interest from March 16, 1929, and a balance on the second note of $560.33, with interest from March 8, 1930.

On May 9, 1930, Hayes Scott reconveyed the 25-acre tract to the bankrupt, R. E. May, and in the deed of reconveyance the consideration, among other things, is recited to be the release of the unpaid purchase-money liens retained in the prior deed from May to Scott. The purchaser of the 12-acre tract conveyed it, subject to the liens retained thereon, to one Haze Lane, and on May 2, 1931, Lane reconveyed this tract, also, to the bankrupt, May, in consideration of the cancellation of the lien indebtedness outstanding against it.

On December 29, 1931, the bankrupt, May, executed and delivered to Arthur Jacobs a mortgage on both tracts of land in question to secure his note for $1,784, of which $784 represented a pre-existing unsecured indebtedness, and $1,000 represented a loan made at the time the mortgage was executed.

This mortgage was duly lodged and entered of record. The failure of the referee to adjudge this mortgage lien prior and superior to the lien asserted by the bank is the alleged error of which the petitioner Jacobs now complains.

Jacobs rests his claim to priority upon the fact that at all times the bankrupt, May, appeared from the record to be the legal holder of all the notes now set up by the bank, and claims that by his acceptance of the deeds from Hayes Scott and Haze Lane, above referred to, a release and discharge of the liens on both tracts of land was effected in the manner and form prescribed by sections 498 and 498a of the Kentucky Statutes. It is contended that said deeds comply with the provisions of section 498 authorizing a lien to be "discharged by a separate instrument." To show that the said deeds do not fulfill the statutory requirement, it appears necessary to do nothing more than call attention to the express provisions of section 498 and subsection 3 of section 498a, providing in substance that the separate instrument of release, in order to be effective, must be executed, in the manner and form required in the execution of deeds, by the person appearing from the record to be the legal holder of the note or notes secured by the lien. Hence, the requirements of the statutes in this respect could only be fulfilled by a deed of release executed by R. E. May, as he appeared from the record to be the holder of the lien notes. The deeds relied upon were not executed or acknowledged by R. E. May, but by the parties against whom the lien indebtedness existed.

May, the apparent lienholder, merely accepted these deeds. The question therefore arises as to what was the effect of these deeds of reconveyance to May, other than to evidence his agreement to release the debtors of their personal liability to him upon the lien notes.

It is generally true, under the equitable doctrine of merger, that where the owner of a lien upon an estate acquires the fee, a merger results, the effect of which is to extinguish the lien. However, in order to effect such a merger, the right previously held and the right subsequently acquired must coalesce in the same person and in the same right without any other intervening equity or right. Jones on Mortgages, § 848.

It has been repeatedly held, also, that where it is apparent from the circumstances surrounding the transaction that it was not the purpose or intention of the owner in acquiring the greater estate to extinguish the lesser estate, such a merger will not be declared. Perry on Trusts, § 347; Wiedemann v. Crawford, 158 Ky. 657, 166 S. W.

185. Where there is a reason for keeping the lesser estate alive, such as the existence of an independent right, equity will not destroy but will preserve the separate existence of the two estates. Pomeroy's Equity Jurisprudence, § 791.

Under these authorities, it appears that by accepting reconveyance of these tracts of land from the persons owing the notes secured by the lien, no merger effecting the extinguishment of the liens resulted, if the bankrupt May did not intend such a result, or if there was then an outstanding or intervening interest or equity to be preserved.

At the time the bankrupt, May, accepted reconveyance of both tracts of land, he was, of course, fully aware of the fact that, having sold the notes to the bank, the bank was the owner of the lien against the land and was dependent upon their continued existence and preservation as security for the payment of these notes. It would seem entirely inconsistent with the circumstances and entirely out of harmony with the situation and relations of the parties to conclude, from the evidence in this case, that, in accepting these deeds, Mr. May entertained any such corrupt motive or purpose as to thereby fraudulently attempt to extinguish the right of the bank to its lien, or, in any wise, to deprive the bank of its security for his debt. It was evidently his purpose to hold the title to the land, subject to the bank's rights arising from the lien.

Nevertheless, regardless of what may have been the intention of the bankrupt, May, in accepting these deeds, the admitted existence of the outstanding equity in favor of the bank is an insuperable obstruction to declaring these deeds to be effective in merging the lien with the fee and thereby destroying it.

Entirely aside, however, from the questions relating to the record of the title and regardless of what appearance these records may have made to an innocent purchaser without notice, if at the time of taking his mortgage upon these tracts of land, the petitioner, Arthur Jacobs, had sufficient knowledge or information with regard to the existence of the bank's lien, as would put a reasonably prudent person on inquiry, and failed to ascertain the facts which even slight inquiry at the bank would have disclosed, it is a familiar rule that he cannot be heard to assert priority in favor of his mortgage. It appears that the mortgage executed to Jacobs expressly set out

832

that the 25-acre tract was subject to a lien in favor of the bank. It is quite apparent from the testimony that at the time the mortgage was given to Jacobs, he was made fully aware of the fact that the bank had some kind or character of claims against this land, or probably had. The bankrupt, May, testified: "I told him the lien note against the Hayes Scott land was in the Mt. Sterling National Bank and had been for years up until about the time I went to Whitesburg; and I wrote to W. C. Hamilton, who had attended to the business before that, and told him to get hold of this darkey and get some sort of settlement out of him and get some money out of him some way; he did and sent me some new notes, I don't know where they are, I have misplaced them, but he did that and I told Arthur about that and I told him I did not think, according to that, there is any lien against the 25 acres."

The evidence shows, without dispute, that at the time of preparing and executing the mortgage to Jacobs, his attorney, Mr. Watson, made a memorandum of the transaction, at the bottom of which was this notation: "Mt. Sterling National Bank. December 29, 1931." This is indisputable evidence of the fact that at the time of the execution of the mortgage there was some discussion between the parties relative to the interests of the bank in the property.

Confronted with this information and with the further information evidenced by the recital in his mortgage, Jacobs could not have been misled by any contrary appearances disclosed by the deeds. The fact is, however, he could not have been misled by the deed records, for he candidly admits that he did not examine the records and never saw the deeds. The evidence is fully satisfying that the information given to Jacobs at the time was amply sufficient to put a reasonably prudent person on inquiry, and if he had followed up that information, as it was his duty to do, under the circumstances, the fact that the bank held these lien notes against the land would have been fully disclosed to him. He did not do so. Under such circumstances, he cannot be classed as an innocent purchaser without notice. Gayle v. Greasy Creek Coal & Land Co., 249 Ky. 251, 60 S.W.(2d) 599.

■ With this information in regard to the condition of the title which he was accepting, it is apparent that the failure of the bank to have the lien notes assigned of record did not mislead or prejudice Jacobs. It has been repeatedly held that the purpose of the recording statutes is to protect bona fide purchasers and creditors, without notice. Head v. Oldham Bank, etc., Co., 249 Ky. 292, 60 S.W.(2d) 621; American Nat. Bank v. Stark, 246 Ky. 225, 54 S.W.(2d) 906.

■ For the reasons set out, it appears that the lien of the bank against the proceeds of the two tracts of land is prior and superior to the mortgage lien of Jacobs. The order of the referee was correct in so adjudging, and the same is now affirmed.