# Barriger v. Martin.
(Decided May 14, 1935.)

WHEELER, WHEELER & SHELBOURNE and ROBERT L. GEVEDEN for appellant.

STEVE WILEY and R. O. WILLINGHAM for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On March 23, 1914, Z. V. Moyers executed and delivered to S. E. Barriger a note bearing that date for $973, due 12 months after date, and bearing interest at the rate of 10 per cent. per annum from date. Simultaneously with the execution and delivery of the note, Z. V. Moyers and Katie Moyers, his wife, executed, acknowledged, and delivered to the payee a mortgage on

two tracts of land in Carlisle county to secure the payment of the note, and this mortgage was immediately recorded in the county court clerk's office of Carlisle county.

On September 14, 1920, Z. V. Moyers executed and delivered to S. E. Barriger another note for $1,794.58, due one year after date, and bearing interest at the rate of 10 per cent., and on the same date the maker and his wife executed, acknowledged, and delivered to the payee a mortgage on five tracts of land in Carlisle county, including the tracts covered by the first mortgage, to secure the payment of the mortgage. This mortgage was not put to record until April 7, 1922.

On June 2, 1921, Z. V. Moyers and Katie Moyers executed and delivered to Miss Maie Pease, who has since intermarried with Henry Martin, a note for $650 due one year thereafter, and bearing 10 per cent. interest from date, and on the same date executed and delivered to the payee a mortgage to secure the payment of the note covering the lands embraced in the second mortgage to Barriger; however, two of the tracts separately described in this mortgage were included in the description of one tract in the Barriger mortgage. This mortgage was put to record in the county court clerk's office of Carlisle county on September 22, 1921.

On October 24, 1933, Mrs. Martin instituted this action seeking to recover the amount due on the note and the enforcement of her mortgage lien. There are a number of small credits on the note as shown by the pleadings and exhibits, but under the issues to be determined a recital of these credits will be unnecessary. She alleged that the record in the office of the clerk of Carlisle county discloses that the defendant, S. E. Barriger, had a lien upon the land described in her petition, but that she had no knowledge or information as to whether such lien had been satisfied, and further alleged that if he had a lien, it was subject to and inferior to her mortgage lien, and she asked that he be required to set up and assert any lien he might have on the land.

By separate answer Z. V. Moyers admitted the execution and delivery of the note and mortgage to Mrs. Martin, but denied that the mortgage was a first or superior lien on the land described in the petition. He alleged that at the time he executed and de-

livered the note and mortgage to plaintiff, she was advised and informed that S. E. Barriger held a note and mortgage for $1,794.58, dated September 14, 1920, and that her mortgage was second and inferior to that of Barriger.

By separate answer and cross-petition defendant S. E. Barriger set up the execution and delivery of the two notes and the mortgage to him hereinbefore referred to, and alleged that the $1,794.58 note was a renewal of the original note for $973, and that no part of the original or the renewal note had been paid, and that the last mortgage was taken to better secure the note for $1,794.58. He alleged that by reason of these mortgages he had a first and superior lien on the land described in his answer and petition to secure the payment of the money due as evidenced by his note. In a second paragraph he denied that plaintiff had a superior lien on the land described in the petition to secure the payment of her debt, and alleged that, at the time she accepted and received the note and mortgage referred to in her petition, the mortgage executed and delivered to him by Z. V. Moyers and wife on March 23, 1914, was on record at the clerk's office, and that she accepted her mortgage with full, thorough, and complete knowledge and notice of the existence of the $1,798.54 indebtedness evidenced by the note and mortgage of September 14, 1920, and that because of such mortgage she only acquired a second lien on the property described in her mortgage, which was inferior to his lien. He asked that his answer be treated as a cross-petition against Z. V. Moyers and wife, and that his indebtedness in the sum of $1,798.54, with 10 per cent. interest from September 14, 1920, by reason of the mortgage, be adjudged a superior lien on the lands described in the pleading, and that plaintiff's lien be adjudged inferior thereto.

By reply, plaintiff controverted the affirmative allegations of the answer of Moyers and Barriger and affirmatively alleged that the alleged renewal of the $973 note held by Barriger did not operate as a prolongation or extension of the time within which the mortgage of March 23, 1914, might be enforced because the parties to the mortgage did not, before 15 years after the maturity of the debt secured by that mortgage, enter a memorandum on the margin of the record of the mort-

gage attested by the clerk showing an extension, the time thereof, and the amount still due thereon; that by reason of the failure so to do, Barriger was estopped from asserting a superior lien, and plaintiff pleaded and relied on the statute of limitations as a bar to the right of Barriger to assert a superior lien upon the land covered by the mortgage.

By an amended reply, plaintiff elaborated on her allegations that she had no actual knowledge of the S. E. Barriger mortgage lien, and, with reference to the failure of the parties to make a memorandum on the margin of the original mortgage concerning an extension of the lien or indebtedness, further alleged that Barriger's debt was made up of a large amount of usury and that the only amount due him was the principal sum of $150 plus interest at the rate of 6 per cent. per annum.

After evidence was heard orally, by agreement of parties, it was adjudged that plaintiff recover of Z. V. Moyers $851.89, with interest from October 25, 1933, until paid, which was found to be the balance due her after her transaction with Moyers had been purged of all usury; that to secure her indebtedness, interest, and costs, she had a first and superior lien on the tract of land described in the pleadings, and that S. E. Barriger had a second and inferior lien to secure his debt, which after being purged of usury amounted to the sum of $1,322.14, with interest thereon from September 14, 1920. It was further adjudged that the note taken by Barriger and the mortgage as security therefor on September 14, 1920, was a novation of the note of $973 dated March 23, 1914, and that so much of the answer and cross-petition of Barriger as claimed a lien superior to the plaintiff be dismissed; that the lien of Barriger will follow the proceeds of the sale of the land, and that he be entitled to so much thereof as shall remain after the debt, interest, and costs of plaintiff have been paid. It was further adjudged that the property was not susceptible of division without materially impairing its value, and that it be sold as a whole for the purpose of satisfying the lien indebtedness. From so much of the judgment as dismissed his answer and cross-petition and denied him a prior and superior lien on the lands covered by the mortgages, defendant Barriger is appealing.

Most of the proof goes to the question whether Mrs. Martin, or a sister who acted as her agent in the transaction with Mr. Moyers, had actual notice of the indebtedness due Mr. Barriger and the mortgages to secure the payment of same. The evidence for appellee is to the effect that neither had such knowledge. On the other hand, the evidence for appellant is equally positive and persuasive that they both were advised and had knowledge of the outstanding notes and mortgages against the property.

The grounds argued and relied on for reversal by counsel for appellant are: (1) That appellee at the time she took her mortgage had both actual and constructive notice of appellant's mortgage lien; (2) that appellant's second note was not a novation of the first one; (3) that the 15-year statute of limitations (Kentucky Statutes, sec. 2514) does not protect appellee; and (4) that appellee was neither a purchaser nor creditor within the meaning of section 2514 of the Statutes.

While the evidence for appellant that appellee did have actual knowledge of his mortgage lien at the time she took her mortgage is of a rather persuasive and convincing character, in view of the conflict in evidence on this question, we are not prepared to say that appellee did not sustain her allegation with respect thereto. The recordation of the 1914 mortgage in the proper office did bring constructive notice to appellee of its existence. An examination of the records would have revealed this mortgage, and the lead it afforded, if followed by timely inquiry, would no doubt have revealed the true state of facts concerning appellant's lien indebtedness.

Passing over the intervening ground to a discussion of the purpose and effect of section 2514, Kentucky Statutes, as it may apply here, it will be found that so much of that section as is pertinent reads:

"* * * And no promise, or acknowledgment, or payment of money by any person bound on any bond or obligation for the payment of money secured by a lien shall operate as a prolongation or extension of the time within which such lien may be enforced as against purchasers or creditors; unless the promisor and the holder of the lien, before fifteen years after the maturity of the debt,

shall enter a memorandum on the margin of the record of the deed or mortgage, attested by the clerk, showing that the debt is extended, and for what time it is extended, and the amount still due thereon."

As held in American National Bank v. Stark, 246 Ky. 225, 54 S. W. (2d) 906, and followed in Head v. Oldham Bank & Trust Co., 249 Ky. 292, 60 S. W. (2d) 621, section 2514 of the Statutes, as amended by chapter 132, sec. 1, Acts 1918, was not intended to and does not operate to affect the prolongation of a lien indebtedness as between the parties, but left that untouched; the purpose and intent of the statute as amended being for the protection of third parties, and to require that a record of the prolongation of lien indebtedness be made as required by the statute so that those who do not have actual knowledge thereof may rely on what the record discloses.

In the Head Case, supra, it was held in effect that a mortgage taken in 1925 with actual notice and knowledge of a prior mortgage executed in 1885 was not entitled to priority, although no memorandum was made on the margin of the record of the 1885 mortgage as provided by the statute in question. Whether appellee comes within the protected class under the statute is beside the question. Whatever right appellee took under her mortgage she acquired before 15 years after the maturity of appellant's mortgage indebtedness, and her rights under the statute were fixed as of that date and did not operate to give her priority merely because of subsequent failure of the parties to the prior mortgage to comply with its provisions.

Coming to a consideration of the effect of the renewal of the original indebtedness and the effect of a new mortgage covering the lands described in the original mortgage and other lands not included therein, we find that although the second mortgage and note were executed prior to the time Mrs. Martin took her mortgage, it had not, at that time, been put to record.

In the case of Rowe v. Simmons et al., 21 S. W. 872, 14 Ky. Law Rep. 780, Simmons had become surety for Rowe for large sums of money, and had from time to time taken mortgages from the latter to secure the payment of the debt for which he, as surety, was bound.

After some of these mortgages had been taken, Rowe conveyed to his wife one-fourth of the lands embraced by the mortgage for life, and at her death to her children, with the power to sell on certain conditions. After the deed was executed, Simmons became bound as surety on other notes for Rowe, and took mortgages on the land as he had previously done to indemnify himself as surety. Although the deed had been recorded, it appears that Simmons had no actual knowledge of its execution. It appears that the proceeds of the notes executed after the deed had been made and recorded were used to pay notes executed prior to that time. Mrs. Rowe died before the litigation arose, and her daughter was claiming the one-fourth interest free from the subsequent mortgages, because when they were executed her mother was invested with title thereto under the deed. It was held that this claim was not just nor equitable, and the first reason assigned for such holding was that the proceeds of the subsequent notes were used to retire the prior indebtedness. While it was not so stated in the opinion this was in effect a renewal or extension of the original indebtedness. For a case bearing even closer analogy, see Burdett v. Clay, 47 Ky. (8 B. Mon.) 287.

In 19 R. C. L. page 452, sec. 236, it is said:

"It is well settled that the acceptance by a mortgagee of a new mortgage, and his cancellation of the old one, does not deprive him of his right to have the lien of the discharged mortgage continued against an intervening lien, where the act of cancellation was done in ignorance of the fact that the intervening lien existed; unless there is some special disqualifying fact; and this, although the intervening lien was on record at the time."

To the same effect, see 41 C. J. 582, sec. 546; United States v. Grover (D. C.) 227 F. 181; and the long list of cases cited in note 96 under the cited section of 41 C. J.

Here the old mortgage was not released or canceled and the new mortgage was executed before Mrs. Martin acquired the lien, although not recorded until afterward.

In Swift v. Kraemer, 13 Cal. 526, 530, 73 Am. Dec. 603, two notes and mortgages were retired and a new note and mortgage given to cover the old ones and an

additional advance in cash. It was held that the retiring mortgage would be kept alive as against an intervening claim. In the course of the opinion it is said:

> "We regard the cancellation of the old mortgages and the substitution of the new, as contemporaneous acts. It was not creating a new incumbrance but simply changing the form of the old."

In Tolman v. Smith et al., 85 Cal. 280, 24 P. 743, 746, it is said:

> "And so where, as in the case before us, one mortgage is substituted for another, equity will keep the first alive when the interests of justice require it."

See, also, Pouder v. Ritzinger, 102 Ind. 571, 1 N. E. 44; Packard v. Kingman, 11 Iowa, 219; Flower v. Elwood, 66 Ill. 438; Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923; Hutchinson v. Swartsweller, 31 N. J. Eq. 205.

A number of authorities indicate that this same rule would apply even though there has been a formal release of the original mortgage. So far as the mortgage of 1914 on the lands covered thereby to secure the original notes is concerned, appellee has not been deceived, misled, nor has she paid anything on the faith of the matters of which she complains. Applying the rules above enunciated to the facts at hand, we are constrained to hold that in equity and justice she is not entitled to a prior lien on the lands embraced in the original mortgage, but since the second mortgage had not been put to record when she took her mortgage, and there is a conflict of evidence as to whether she had actual knowledge of the second mortgage, she is entitled to a prior lien on so much of the lands described in her mortgage as is not embraced in appellant's mortgage of 1914.

The chancellor correctly purged each of these transactions of usury, and the contention that the interest on appellant's indebtedness was not correctly computed may, if meritorious, be corrected on a return of the case.

For the reasons indicated, the judgment is reversed, with directions to enter judgment in conformity with this opinion.