## E. T. Lewis Co. v. City of Winchester.

(Decided October 13, 1910.)

### Appeal from Clark Circuit Court.

Municipalities—Constructing Sewers—Issual of Bonds— Validity.— Under an ordinance of the common council of the city of Winchester, the question was submitted to the voters thereof at the November election, 1909, for or against issuing a series of 65 bonds of the face value of $1,000.00 each, for the construction of a general sewerage system therein, which resulted in 1140 votes for, and 168 votes against it. It was provided in the ordinance that $500.00 should be collected annually by taxation to pay interest on the bonds and to establish a sinking fund for their final payment. A contract was made by the city with appellant to construct the sewers and to take the bonds at their face value in payment therefor, but he subsequently refused to accept them unless it should be adjudged that they were valid. In an action by the city, the contract was enforced and defendant appeals. Held, that the record shows without contradiction that all the provisions of the Constitution, the statutes, and ordinances were fully complied with by the city, that the issuance of the bonds was authorized by a vote of the people as provided by law, and we are unable to see any reason to hold the bonds invalid.

J. SMITH HAYS for appellant.

PENDLETON, BUSH & BUSH and F. H. HAGGARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—Affirming.

This action was instituted in the Clark circuit court by the city of Winchester for the purpose of testing the validity of a series of sixty-five municipal bonds of the face value of one thousand dollars each, issued for the purpose of establishing a sewerage system in the municipality.

The question arising for adjudication on the record is one of law, and it will only be necessary to state such facts in regard to the issuance of the bonds as will serve to enable us to properly bring out and adjudicate it.

Prior to November, 1909, the common council of the city of Winchester ordained that there should be submitted, at the general November election, to the qualified voters of the city of Winchester the question as to whether or not the city should be authorized to issue the series of bonds above mentioned for the purpose of constructing a general sewerage system for the municipality. At the general election in November, 1909, the question of the issuance of the bonds was duly submitted to the qualified voters of the municipality, and a canvass of the votes cast upon the proposition of their issue showed that of the total number of votes cast, one thousand one hundred and forty were in favor of the issuance of the bonds, and one hundred and sixty-eight votes were cast against it; it thus appearing that more than two-thirds of the votes cast upon the proposition were in favor of the issuance of the bonds. In the same ordinance authorizing the issuance of the bonds, it was provided that the sum of five thousand five hundred dollars should be annually collected by taxation for the purpose of paying the annual interest on the bonds and establishing a sinking fund for their final payment at the expiration of twenty years when, by their terms, they would become due. Afterwards, the bonds were duly prepared and printed for issuance, and the city made several attempts to sell them, without success. Finally, however, a contract was made with the appellant, E. T. Lewis Company, which agreed to take the bonds at their face value in payment for the work of constructing the sewers, it having obtained the contract from the city to do this work.

It was further provided in the contract that, if there were more bonds than the contract price for building the

sewers amounted to, the appellant was to pay cash for the over-plus. After this contract was made, the appellant becoming apprehensive as to the validity of the bonds, refused to accept them unless it should be adjudged that they were valid. Thereupon the city made a tender of the bonds to the appellant, and upon its refusal to receive or pay for the same, this action was instituted. The petition sets out with minute particularity all of the facts leading up to the issuance of the bonds, their tender to the appellant, and its refusal to receive or pay for the same. The answer admits all of the material facts set up in the petition, and expresses a willingness on the part of appellant to accept and pay for the bonds according to its agreement, provided it can have an assurance of their validity. It then pleads that the bonds were invalid because the sum of five thousand five hundred dollars, which was to be raised annually to pay the current interest on the bonds and to provide a sufficient sinking fund to extinguish them when due, was insufficient for the purpose; and it sets forth that the interest on the sixty-five thousand dollars worth of bonds, at four and one-half per cent. will amount to two thousand nine hundred and twenty-five dollars annually; that this will leave only the sum of two thousand five hundred and seventy-five dollars to be placed annually in the sinking fund provided for the extinguishment of the bonds at the end of twenty years, and that this sum will amount, in twenty years, to fifty-one thousand five hundred dollars, leaving the payment of thirteen thousand five hundred dollars of the bonds unprovided for. The city replied that, while it was true the sum of two thousand five hundred and seventy-five dollars paid annually into the sinking fund would only amount in twenty years to fifty-one thousand five hundred dollars, yet it has an arrangement by which it would invest the sinking fund at a rate of interest which in the twenty years would amount, together with the principal paid into the sinking fund, to more than sixty-five thousand dollars. A demurrer to this reply was overruled by the court, and appellant declining to plead further, judgment was rendered in accordance with the prayer of the petition, holding that the bonds issued by the city were valid and legal obligations, and that the defendant (appellant) had no defense to the demand of the city that it should take the bonds as per its agreement. From this judgment the appellant is here on appeal.

The judgment of the circuit court is correct. The objection that the tax provided for is insufficient and the series of bonds, therefore, invalid, is based upon the provision of section 159 of the Constitution, which is as follows: "Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same." It will be observed that the Constitution only requires that the tax shall be sufficient to pay the annual interest on the indebtedness and to create a sinking fund to pay the principal thereof within not more than forty years from the time of contracting the indebtedness. Manifestly, it was not the intention of the framers of the Constitution to require that more taxes should be collected from the people than necessary to meet the principal and the interest. It is not required that the city should collect taxes and place the amount in its sinking fund without making any attempt to increase the aggregate of the sinking fund by investing the money held for the purpose of paying the bonds. The city is authorized to do what any prudent man would do with his own money under the circumstances; that is, to invest it in some safe way which will produce an annual interest and thus increase the sinking fund from year to year, and thereby lessen the burden of the taxpayer. Obviously, the city has a right to do this, and it is equally clear that it will be enabled to so invest its money that there will be no deficit at the end of twenty years, but, on the contrary, there will be more money than necessary to pay off and extinguish the whole indebtedness of sixty-five thousand dollars.

We do not, however, mean to intimate that even if there was a deficit the city's liability to pay the bonds would be in any way lessened or extinguished. On the contrary, we are of opinion that if by miscalculation or from any other cause the sinking fund should prove insufficient to pay off the whole bonded indebtedness when it falls due, the obligation of the municipality to meet its indebtedness would still remain unimpaired and legally enforcible. Suppose, for instance, just before the bonds fall due, the whole sinking fund should be stolen or lost by the defalcation of officials, or destroyed

by fire; would any one contend that this calamity would in anywise release the city from its obligation to pay the bonds? We think not. The provision for an annual tax to meet the current interest and provide a sinking fund is for the benefit of the creditor, and the fact that the city in undertaking to comply with the Constitution should make a mistake as to the amount of annual taxes to be raised would in nowise release it from its obligation to pay its bonds when they fall due.

As said before, the record shows without contradiction that all the provisions of the Constitution, the statutes and the ordinances were fully complied with by the municipality; that the issuance of the bonds was authorized by vote of the people as provided by law, and we are unable to perceive any reason to hold the bonds in question invalid. It results, therefore, that the judgment of the circuit court was correct and should be affirmed, and is it so ordered.