## Hunter v. City of Louisville, et al.

(Decided March 27, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Evidence—Court Takes Notice that Municipal Bonds Cannot be
    Sold Advantageously Unless Negotiable.—The court knows, as a
    matter of current commercial custom, that an issue of municipal
    bonds, aggregating $5,000.000.00, cannot be sold advantageously
    unless the bonds are negotiable.

2.  Municipal Corporations—Municipalities May Exercise Powers
    Necessarily Implied.—Municipalities may exercise, not only the
    powers expressly granted to them by statute, but such as are
    necessarily or fairly implied in or incident to the powers so ex-
    pressly granted, and those essential to the accomplishment of
    the things which they are expressly authorized to do.

3.  Municipal Corporations—Authority to Issue Bonds Embraces
    Power to Make Bonds Negotiable.—Legislative authority to issue
    interest-bearing bonds generally embraces power to make bonds
    negotiable.

4.  Municipal Corporations—Statute Held to Authorize Negotiable
    Bonds for Sewerage System.—Acts 1920, c. 86, authorizing city
    of Louisville to issue bonds for sewerage system, held to authorize
    the city to issue and sell negotiable bonds.

5.  Municipal Corporations—Statute Authorizing Bonds Held to Dis-
    pense with Necessity of Specification in Ordinances of Disposi-
    tion of Proceeds.—Specific provisions of statute (Acts 1920, c.
    86, section 12), authorizing issuance of municipal bonds for sewer-
    age system, held to dispense with necessity of specification in
    ordinance of disposition of proceeds of sale of bonds, the de-
    positaries therefor, terms of interest, and manner of withdrawing
    them.

6.  Municipal Corporations—Submission of Issuance of Sewerage
    Bonds Held Not to Require Submission of Indebtedness in Ex-
    cess of Annual Income.—In submitting question of issuing muni-
    cipal bonds for sewerage purposes, under Acts 1920, c. 86, sub-
    mission of question whether city should become indebted in ex-
    cess of income and revenue for year was not necessary under
    Constitution, section 157.

EMMET R. FIELD for appellant.

WILLIAM T. BASKETT for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellant, a citizen and taxpayer of the city of Lou-
isville, instituted this action against the city, its mayor

and its commissioners of sewerage, wherein he seeks to enjoin them from issuing and selling $5,000,000.00 of sewerage bonds the city was authorized to issue under an enabling act passed by the 1920 General Assembly, being chapter 86 of the Acts of that year.

A demurrer to his petition was sustained, and he declining to plead further, his petition was dismissed, and he prosecutes this appeal.

The petition refers to the act of the General Assembly and sets forth at length the provisions of an ordinance of the city of Louisville passed in conformity to the act, which ordinance provided for the holding of an election at the regular November election, 1924, in the city upon the question whether or not the city should become indebted in the sum of $5,000,000.00 by issuing its bonds for that amount to be used as authorized in the act of the General Assembly to construct additions to and make more perfect the city's system of sewerage. It is alleged that notice of the holding of the election was given in the manner required by the ordinance, and that at the election the identical question prescribed in the ordinance was submitted to the voters of the city, and printed on each and every ballot used at the election, and that there were cast on that question 61,753 votes and of this number 43,854 were cast in the affirmative and in favor of the issuance of the bonds, and 17,899 were cast in the negative and against their issue, and that such result of the election had been duly certified.

It is then alleged that the said ordinance was invalid for three reasons, to-wit:

1. Because the ordinance passed by the general council transcends and contravenes the provisions of the enabling act in that the ordinance provides for the issuance of *negotiable* bonds, while the enabling act does not empower or authorize the city to issue bonds of that character, but only authorizes the issuance of "bonds" without the requirement of negotiability.

2. Because the ordinance fails to specify to whose credit the proceeds of the bonds, when they shall have been sold, shall go, and fails to specify in what depositaries, if any, their proceeds shall be placed, and fails to specify in what manner or upon what terms as to interest, if any, the proceeds shall be deposited, and fails to specify in what manner said funds shall be withdrawn from deposit, and because of such failures in the ordi-

nance there is no sufficient compliance with the authority conferred by the enabling act.

3. Because neither the notice of election nor the question submitted to the voters submitted to them whether the city should exceed its current income for the fiscal year for the purpose of extending and perfecting its sewerage system.

These three questions are the only ones discussed in the briefs, and will be considered in the order they are stated.

It is true the enabling act does not in express terms authorize the issual of negotiable bonds, but it does give express authority for the issual of bonds to the amount of $5,000,000.00, and distinctly provides that the ordinance shall provide the date and maturity of the bonds, the rate of interest they shall bear,

"and the ordinance shall also contain the necessary details in reference to the execution and delivery of said bonds, their denominations, coupons to be annexed, taxes to be levied to pay the interest, and a sinking fund to retire such bonds at maturity."

While there is no specific authority to issue negotiable bonds, there is a specific grant of power to do everything which ordinarily is done in the issuing of negotiable bonds. We know as a matter of current commercial custom that so large an issue of municipal bonds could not be advantageously placed upon the market and sold, unless they were in fact made negotiable.

Municipalities may exercises not only the powers expresly granted to them by statute, but such as are necessarily or fairly implied in or incident to the powers so expressly granted, and those essential to the accomplishment of the things which they are expressly authorized to do. Barrow v. Bradley, 190 Ky. 480.

Giving effect, therefore, to these well recognized rules of municipal government, we find from the broad and comprehensive grant of power in the enabling act that the legislative purpose necessarily was to authorize the general council to provide for the sale of negotiable bonds, otherwise it would not have granted authority to provide for their maturity, for the rate of interest they should bear or for the annexing of interest coupons to them.

Not only so, we find the general rule to be that where express power has been given by the legislature to a mu-

nicipality to issue interest bearing bonds, this power appears to contemplate and embrace the power to make the bonds negotiable.

Dillon on Municipal Corporations, fifth edition, vol. 2, section 882, says:

> "If express power be conferred upon a municipality to issue bonds bearing interest, this contemplates and by necessary or reasonable implication authorizes the issue of negotiable bonds. . . . The general power to issue 'bonds' must be taken to authorize bonds in the usual form of such well known commercial obligations. The usual form embodies a contract and obligation negotiable in its terms."

Again, we find this rule stated in 28 Cyc., p. 1612:

> "An express legislative grant of power is not essential to confer the authority to give municipal bonds a negotiable and commercial form and character, but such power may be inferred from the intent of the act, indicated by its purpose and scope." See also Vicksburg v. Lombard, 51 Miss. 111; Maddox v. Graham, 2 Met. 56.

The second contention is equally untenable. It is true the ordinance is silent on the question of what shall become of the proceeds of the bonds when they are sold, or in what depositaries they shall be placed, or upon what terms as to interest they shall be deposited, or as to the manner of their withdrawal; but the enabling act was so specific as to these things that no such provision in the ordinance was necessary.

Section 12 of the enabling act provides when the bonds were issued they should be placed under the control of the sewerage commission, which should determine when and at what price they should be sold, with certain restrictions. It provides that when they are sold the proceeds should go to the credit of the commission

> "in the same depositaries which are selected for the deposit of the funds of the sinking fund commissioners of the city, and upon the same agreement as to interest, and shall be withdrawn only upon the checks of the secretary and treasurer of the commission countersigned by the chairman, accompanying a voucher approved by the chief engineer."

Nor do we find any substantial merit in the third contention.

It has never been held to be necessary under the provisions of section 157 of our Constitution, in submitting such questions in municipalities, whether they shall become indebted in a specific amount for a specific purpose, to also submit as a part of the question whether they should become indebted "to an amount exceeding in any year the income and revenue provided for such year." The necessity for incorporating this idea in the submission is not apparent, for if there was no purpose to become indebted to an amount exceeding the income and revenue for that year there would ordinarily be no necessity for the submission of the question to a vote of the people.

The very fact that it becomes necessary to submit to the people of the municipality whether it shall become indebted for a specific amount for a certain purpose, presupposes that such indebtedness will exceed the income and revenue provided for that year, otherwise the assent of the voters to incur such indebtedness would not be necessary. All that is necessary in the submission of such questions to the voters of municipalities is to submit to them whether or not a given indebtedness shall be incurred for a specific purpose. Constitution, section 157; Bardstown Turnpike Co. v. Nelson County, 117 Ky. 676; Whaley v. Commonwealth, 110 Ky. 154.

The questions raised do not present any valid reason why the bonds should not be issued, and a careful inspection of the record discloses no other reason.

The demurrer to the petition was, therefore, properly sustained.

Judgment affirmed. Judge Dietzman not sitting.