## Pulaski County et al. v. Ben Hur Life Ass'n of Crawfordsville, Ind., et al.

Jan. 21, 1941.

120

122

R. C. Tartar, W. R. Jones and Lawrence S. Hail for appellants.

Woodward, Dawson & Hobson, B. J. Bethurum, S. S. Willis, S. D. Rouse, Harvey & McIntyre, George W. Meuth, Robert H. Winn, W. H. Crutcher, Jr., Grafton & Grafton, Stites & Stites and Carroll, McElwain & Ballantine for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Two important questions are presented by the appeal. One is whether bonds issued by a county for the construction of roads and bridges under the authority of Section 157a of the Constitution of Kentucky and Section 4307 of the Statutes are negotiable instruments so as to divest the maker of the right to rely on the defective title of the predecessor of a purchaser for value. The other question is the criterion to be used for determining whether an issue of bonds exceeded the county's authority, and, if so, the effect of an over-issue. This is a consolidated suit by owners of seven matured bonds and of interest coupons on others to recover judgment against Pulaski County and to enforce its payment. The circuit court granted the relief asked.

The county contends: (1) The contract by which the bonds were sold by the county to plaintiffs' predecessor in title was procured by fraud and deceit and the sale

was without consideration; that the bonds are non-negotiable, hence the plaintiffs are not holders in due course and the remedy against the original purchaser is available; and (2) the bonds are invalid because issued in excess of constitutional limitations.

By a referendum election held under the provisions of Section 157a of the Constitution of Kentucky and Section 4307 of the Statutes, bonds in the amount of $300,000 were authorized but only $280,000 were issued and sold. They are serial bonds extending over a period of thirty years. Pulaski County had previously issued bonds of the same class for the same amount under a different referendum (see Denton v. Pulaski County, 170 Ky. 33, 185 S. W. 481) and $203,500 of that issue were outstanding at the time these bonds were sold. The principal sum to be liquidated by the special levy of 20 cents on the $100 of taxable property authorized by the cited sections of the Constitution and Statutes was, therefore, $483,500.

As a part of its bid to purchase the bonds Caldwell & Company, a brokerage institution of Nashville, Tennessee, proposed that upon their delivery the proceeds should be deposited with it and withdrawn by the county from time to time as the road construction progressed. It agreed to pay the same interest on the deposits that the bonds bore, namely, 4¾ per cent. As security it would give the county a good indemnifying bond and in addition place with the Bank of Tennessee, as trustee, collateral securities of an amount at least equal to the deposit. The proposition was duly accepted by the fiscal court of Pulaski County on September 30, 1930. The bonds were delivered to Caldwell & Company on or about October 18th and that company gave the county a passbook or certificate evidencing the deposit. The collateral placed with the Bank of Tennessee was of the face value of $600,000, but with the exception of a few shares of stock in a small railroad company the securities were of concerns promoted or financed by Caldwell & Company. These included $214,500 of bondholders' certificates secured by a mortgage on a hotel in East St. Louis, Illinois. Early in November, without the county having drawn on the deposit, both Caldwell & Company and the Bank of Tennessee were closed as insolvent. The $600,000 collateral was turned over to the officials of Pulaski County by an order of the United

States District Court at the appraised value of $15,000. To secure the contract of purchase of the bonds, Caldwell & Company represented to the county that it was the strongest and soundest financial institution in the South. The county officials were not negligent, for they found the concern given the highest rating in Dun & Bradstreet, and otherwise learned of its good reputation in financial circles. The Bank of Tennessee proved to have been only the alter ego of Caldwell & Company. Though outwardly sound and solid, both institutions were empty shells. The general creditors of Caldwell & Company received only one-half cent on the dollar. A former vice president of that company, Carter, testified that it had been insolvent for some time as its officers well knew. In order to carry on, the company had purchased bonds and securities for more than their actual worth where contracts could be secured similar to that made with Pulaski County, whereby the proceeds not being immediately payable were left with the company. He had opposed this method of doing business because of the precarious condition of the concern, and had tried to get Rogers Caldwell, the principal and practically the sole owner of the company, to stop the practice. When the Pulaski County contract was made Carter refused to sign the indemnifying bond and went to Caldwell with a remonstrance because the county was dealing with the company in good faith and the transaction was not an honest one. However, Rogers Caldwell approved the transaction and it was consummated in the manner stated. All of this stands admitted. Carter estimated the value of the collateral at the time pledged to be about $80,000 instead of at least $280,000, the amount of the deposit. At that time the hotel bondholders' certificates were worth perhaps 10 cents on the dollar.

The Pulaski County bonds were promptly sold and put in the hands of the public by Caldwell & Company. Within less than three weeks the institution closed and Pulaski County found the "cupboard bare," or almost so. That the title to the bonds was obtained by Caldwell & Company by fraud is certain. The contract was the equivalent of a sale on credit and was beyond the authority of the fiscal court to make. Webster County v. Hall, 275 Ky. 54, 120 S. W. (2d) 756. But this fact does not seem to enter into the case. Nor is this a

case where the purchaser had merely failed to pay an obligation given for the bonds. The whole transaction was permeated by fraud on the part of the purchaser, and, as proved, the contract would not have been made or entered into but for its deception and fraud. The decision rests on the premise, therefore, that fraud vitiated the contract and that the title of Caldwell & Company to the bonds was defective.

The plaintiffs proved their innocence of actual notice of the defect in title of Caldwell & Company. Their title is immune from attack and the county must be held liable to them as innocent holders for value, or bona fide holders in due course, unless the bonds are nonnegotiable in respect of being subject to the defense stated, which was unquestionably available against the original purchaser.

The Negotiable Instruments Act is applicable to municipal bonds and its definitions and provisions must be looked to in determining whether a particular issue or bond is negotiable in the technical sense pertinent to our present consideration. Jones, Bonds & Bond Securities, Sections 285, 287, 672; Hunter v. City of Louisville, 208 Ky. 326, 270 S. W. 841; Cf. Gayle v. Greasy Creek Coal & Land Company, 249 Ky. 251, 60 S. W. (2d) 599. Our particular concern is whether the bonds involved are unconditional promises to pay, the other features of a negotiable instrument being clear and certain. Section 3720b-1, Kentucky Statutes, requires that a negotiable instrument shall contain an unconditional promise or order to pay a sum certain in money. Section 3720b-3, Kentucky Statutes, which is Section 3 of the Uniform Negotiable Instruments Act, is quoted for ready reference:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with it:

"(1) An indication of a particular fund, out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"(2) A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional."

The determination of the character of a bond is sometimes difficult because of the question whether its peculiar terms and conditions contain (1) only an indication of a particular fund out of which payment is to be made or a particular account to be charged with the amount, or (2) a promise to pay it only out of a special or particular fund. The first class, in which negotiability is preserved, is where the reference to the source of revenue is collateral. Illustrative are bonds payable at all events by the municipality but issued under authority of a statute providing for a special tax for the sinking fund and interest, and the instrument indicates that source of funds and security, or perhaps only contains a statement of the transaction which gives rise to the issuance of the bonds. The second class of bonds are those payable exclusively out of a particular fund to be derived from designated sources which may dry up before they have yielded proceeds enough to liquidate the full amount of bonds, or are made payable upon a contingency which may never occur. The distinguishing characteristic is that if there is injected in the promise, specifically or by operation of law, any condition which limits the source of payment, it destroys the unconditional character, and consequent negotiability of the bond. It is the possibility of insufficiency of the fund rather than the probability of sufficiency that determines the question whether the promise itself is contingent and therefore conditional. Jones, Section 289, 406, 407, 416; Washington County v. Williams, 8 Cir., 111 F. 801; National Bank of La Crosse v. Petterson, 200 Ill. 215, 65 N. E. 687; Manker v. American Savings Bank & Trust Company, 131 Wash. 430, 230 P. 406, 42 A. L. R. 1021; Commissioners of Cleveland County v. Bank of Gastonia, 157 N. C. 191, 72 S. E. 996; Blackman v. Lehman, Durr & Co., 63 Ala. 547, 35 Am. Rep. 57.

The bonds in the case at bar are definite promises on the part of Pulaski County to pay the face value and the interest coupons to bearer on specified dates. They contain the statement that for such payment "the full faith, credit and resources of said county are hereby irrevocably pledged." They also contain the following statement:

"This bond is issued in evidence of indebtedness incurred for the purpose of building roads and

bridges in the county of Pulaski pursuant to and in all respects in full compliance with Section 157a of the Constitution of Kentucky and Section 4307 et seq., of Carroll's Kentucky Statutes of 1922 and all other laws of the Commonwealth of Kentucky pertinent hereto and proper orders duly passed by the Fiscal Court of said county prior to the execution hereof and is authorized by more than a majority of the legal voters of said county voting at a special election upon the question called for that purpose by the county court of said county pursuant to a sufficient petition theretofore filed with said county court, notices of which election were duly published and posted as required by law.''

A purchaser is thereby expressly directed to the specific sections of the Constitution and Statutes and to the entire authority under which the bond is issued. He is chargeable with the fullest knowledge of the law as to the extent and limitations of the power of the county in relation thereto and the resources forming the security and furnishing the money for its liquidation. That law is to be regarded as an essential part of the bond itself. No transferee can claim to be an innocent holder because of the ignorance of those requirements. Harshman v. Bates County, 92 U. S. 569, 23 L. Ed. 747; McClure v. Oxford Township, 94 U. S. 429, 24 L. Ed. 129; Chemical Bank & Trust Company v. Oakland County, 264 Mich. 673, 251 N. W. 395; Jones, Bonds and Bond Securities, sections 307, 308, 426. And though the bond contains the pledge of the ''full faith, credit and resources of said county'' to secure its payment, such commitment is, of course, subject to the legal limitations upon the power of the county to make it. The statement must be read in connection with the Constitution and Statutes, as construed by the courts, referred to therein. When so read it can only mean that the faith and credit of the county is pledged to the extent of the resources to be found in the law. Moore v. Nampa, 276 U. S. 536, 48 S. Ct. 340, 72 L. Ed. 688. We turn to view those resources.

Section 157a is an amendment of the Constitution. It is as follows:

''The credit of the Commonwealth may be given, pledged or loaned to any county of the Common-

wealth for public road purposes, and any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for said purpose, in such manner as may be provided by law and when any such indebtedness is incurred by any county said county may levy, in addition to the tax rate allowed under section 157 of the Constitution of Kentucky, an amount not exceeding twenty cents * * * on the one hundred dollars * * * of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.''

Section 157 of the Constitution referred to fixes the maximum tax rate of counties for other than school purposes at 50 cents on the $100 and provides that no county shall become indebted in any year in an amount exceeding the income and revenue provided for such year without the approval of two-thirds of the voters. See Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321.

Section 4307 of the Statutes makes Section 157a of the Constitution operative and regulates the counties in relation thereto. Pertinent provisions are:

''The fiscal court shall have the power and authority to issue and sell bonds from time to time within the constitutional limitation for the purpose of building, constructing and reconstructing public roads and bridges, said bonds to bear interest not to exceed five per cent (5%) per annum, with coupons attached, payable semi-annually, these bonds to be in denominations of not less than one hundred dollars ($100.00) or more than one thousand dollars ($1,000.00), to run not less than five nor more than thirty years, and to be redeemed within that time at the pleasure of the court, and to be sold at not less than par value and accrued interest.''

Other than providing for the investment of the sinking fund, Section 4308 of the Statutes is as follows:

"If bonds are sold to enable the fiscal court to build, construct or reconstruct roads and bridges, the fiscal court shall levy a tax, an amount not exceeding thirty cents (30c) on the one hundred dollars ($100.00) of the assessed valuation of said county, which shall be collected as other county taxation, and appropriated as follows: (first) To the payment of the interest on the bonds; (second) the balance to be placed to the credit of a sinking fund for the redemption of said bonds.'"

However, insofar as the statute purports to authorize a levy of a tax exceeding 20 cents it is unconstitutional because of the limitations of Section 157a of the Constitution. Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 177 S. W. 279.

We may summarize the consistent construction given these sections. They establish an independent system or mode for financing road construction and improvement. The indebtedness is not to be included in the aggregate county indebtedness authorized and limited by Sections 157 and 158 of the Constitution. It may be in addition thereto. These laws restrict the amount of bonds to that which can be liquidated, principal and interest, within the time specified for their maturity by revenue derived from the stipulated special tax rate of 20 cents. The limitation is mandatory. No bond in excess of that amount is valid. A county cannot be required to use any other revenue for the payment of the bonds and interest than that yielded by the special levy or to cover any deficit that may occur, although it is permissible for it to do so out of its general revenue derived from the regular 50 cents tax levy authorized by Section 157 of the Constitution and Section 1882 of the Statutes. Bird v. Asher, 170 Ky. 726, 186 S. W. 663; Mitchell v. Knox County Fiscal Court, supra; Collier v. Bourbon Fiscal Court, 188 Ky. 491, 223 S. W. 149; Hughes v. Eison, 190 Ky. 661, 228 S. W. 676; Smith v. Livingston County, 195 Ky. 382, 242 S. W. 612; Gillis v. Anderson, 256 Ky. 472, 76 S. W. (2d) 279; Whitley County v. Hermann, 263 Ky. 440, 92 S. W. (2d) 797.

Hitherto the consideration of these provisions of the constitution and statutes has been in relation to the creation of a debt and its validity. They must be now viewed in relation to the character of the bonds evi-

dencing the debt. If the obligation of a county assumed under them is confined strictly to levying only the limited tax of 20 cents during the life of the bonds, to collecting it and to disbursing the proceeds to the holders of the bonds—if that be the extent of the obligation—they are but promises to pay the bonds out of a particular fund and this makes them non-negotiable instruments. If the right exists to require the county to extend the time of special levy and perform the concomitant duties until the bonds are paid, or to require the county to exercise its general taxing power in order to get the money with which to pay, then the instruments are negotiable—the operation of the law makes them unconditional promises.

The statutes relating to the bonds are silent as to their negotiable character. It may be observed that the legislature has frequently provided that obligations which would otherwise be clearly payable out of particular funds shall be negotiable instruments. Of such are: Bonds issued for the purchase or erection of bridges by the State Highway Commission payable solely out of tolls, Section 4356s-25, Kentucky Statutes; bonds issued by cities for street improvement, payable out of taxes assessed against property benefited, Section 2839, Kentucky Statutes; Section 3102, Kentucky Statutes; bonds issued for the erection or improvement of municipal electric plants, Section 3480d-5, Kentucky Statutes; for parks and recreational facilities, Section 2741p-18, Kentucky Statutes, Supp. 1940; for hospitals by cities of the second class, Section 3235i-3, Kentucky Statutes, Supp. 1939; for the erection of buildings by the University of Kentucky, Section 4535m-4, Kentucky Statutes. The legislature has also provided that obligations of certain other special municipal corporations and quasi public corporations, though payable out of particular funds, shall have the qualities of negotiable instruments, namely, rural electric co-operative corporations, Section 883j-17, Kentucky Statutes, Supp. 1939; County water districts, Section 938g-30, Kentucky Statutes; Municipal Housing Commissions, Section 2741x-10, Kentucky Statutes; University of Louisville for the erection of buildings, Section 2948c-5, Kentucky Statutes, Supp. 1939; and Sanitary Districts, Section 2062g-41, Kentucky Statutes, Supp. 1940.

The legislature could, of course, have expressly

made these road and bridge bonds negotiable instruments, but it did not. That is significant. Our problem is to ascertain, if we can, whether by failing to declare the bonds negotiable, the legislature intended they should not be, or whether the legislature intended they should be negotiable and did not deem it necessary to include the provision expressly.

The late Mr. Justice Cardozo in "The Nature of the Judicial Process", p. 14, pertinently says:

"Interpretation is often spoken of as if it were nothing but the search and the discovery of a meaning which, however obscure and latent, had none the less a real and ascertainable pre-existence in the legislator's mind. The process is, indeed, that at times, but it is often something more. The ascertainment of intention may be the least of a judge's troubles in ascribing meaning to a statute. 'The fact is,' says Gray in his lectures on the 'Nature and Sources of the Law,' 'that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind if the point had been present.'"

As stated in Kirkman v. Williams' Ex'r, 246 Ky. 481, 55 S. W. (2d) 365, 366, "'The duty of the court is to give effect to the will, not the words, of the Legislature."

Logic, history and custom all have their place in a quest for the legislative intent. We have taken cognizance of the fact that a large issue of public bonds cannot be advantageously sold unless they are negotiable and upon that ground held it competent for a city under an enabling act containing no express authority for the issuance of negotiable bonds to provide that they shall be negotiable. Hunter v. City of Louisville, 208 Ky. 326, 270 S. W. 841. We must weigh the purpose to be accomplished. It is to dispose of the bonds for the best price. That can not be done if they do not possess all the qualities of negotiable instruments. We are aware of no instance where a state or county or mu-

nicipality issued bonds upon such terms as to intentionally make them non-negotiable except bonds for public improvements payable only by assessments against property specially benefited and under the recently developed plan of pledging only the revenues from some public project with the specification that they should not be regarded as a debt or obligation of the unit of government issuing them. When the legislature submitted and the people adopted the amendment to the Constitution in 1909 and the legislature enacted appropriate legislation to provide improved roads for the use of automobiles, which by that time was becoming a popular means of travel, it was to be expected that the counties would incur heavy obligations thereunder. That expectation has been fully realized. It is said that there are perhaps $20,000,000 of the bonds now outstanding. It cannot be thought the legislature intended that so many obligations for such large sums should not have all the qualities, attributes and incidents of negotiable instruments.

The concept of a general obligation is implicit in the constitutional amendment which the legislature was making operative for it authorizes a county "to incur an indebtedness." It is referred to as an "additional indebtedness." The 20 cent tax is permitted "in addition to the tax rate allowed under Section 157 of the Constitution of Kentucky," but it is not mandatorily required. Manifestly the indebtedness to which this is additional, payable out of the general tax levy to which the 20 cents is additional, is free from suspicion of being payable out of particular funds or otherwise being conditional. Appropriate legislation was to be expected.

These considerations lead us to the conclusion that the legislature did not intentionally omit a declaration that the bonds shall be negotiable in order to make them non-negotiable.

The concept of non-negotiability rests upon the conclusion frequently expressed by this court in relation to the creation of a debt it was proposed to incur. We have held to be a debt limitation not only the provision of Section 157a of the Constitution, permitting an indebtedness "not in excess of 5 per centum of the value of the taxable property therein," but also the provision permitting an additional tax levy not exceeding

20 cents. Usually, if not always, the bond issue involved was for the full term of 30 years prescribed by Section 4307 of the Statutes, and we have regarded the 20 cent levy as the only fund out of which the county could be compelled to pay the debt, and held that when that tax was levied the power of the fiscal court was exhausted. This conclusion has been influenced by Section 157 of the Constitution prescribing a maximum tax rate of 50 cents for counties and declaring that an indebtedness incurred in any year in excess of the revenue therein provided should be void unless the assent of two-thirds of the voters had been given. Section 157a contains no such exception. We have recognized the right of a county, at its option, to apply funds produced by a general tax levy or received from other sources for the satisfaction of the bonds, but held that it could not be compelled to do so. The leading cases are Mitchell v. Knox County Fiscal Court, supra, and Bird v. Asher, supra. Recent cases reaffirming and giving a more restricted interpretation are Gillis v. Anderson, supra, and Whitley County v. Hermann, supra. However, in Bird v. Wilson, 171 Ky. 807, 188 S. W. 899, we held a county had the authority to issue road and bridge bonds under Section 157 of the Constitution up to the limit prescribed by Section 158. Not only is there nothing in Section 157a that prevents it but its language implies that authority, for otherwise there would be no debt and no tax rate to which the 20 cent rate could be added. In Hughes v. Eison, 190 Ky. 661, 228 S. W. 676, we regarded Section 157a as having become in effect a part of Section 157 and as enlarging and extending its provisions. Some of our opinions are apparently in conflict with this ruling, notably Whitley County v. Hermann, supra.

We have not heretofore decided what the rights of bondholders would be if the special 20 cent tax should prove inadequate to liquidate the debt. In Gillis v. Anderson, 256 Ky. 472, 76 S. W. (2d) 279, 284 we directed that there be stricken from the judgment the part which required a continuance of the levy after the bonds had matured saying:

> "What may be the rights of the bondholders on the expiration of the bond period was neither necessary nor proper for the court at this time to determine. That is a matter that should have been left

open for future determination as the exigencies of the situation at that time may require or demand.''

If the interpretation heretofore given the sections of the Constitution and statute we are discussing—thought to be required under the concept of a distinct and wholly independent plan of financing the construction of roads which confined the counties strictly to the fund raised by that special levy—be adhered to, then the county is liable only for the payment of the bonds out of that fund and probably it would have to be regarded as a ''particular fund'' within the meaning of the Negotiable Instruments Law. The case at bar requires a re-examination of the subject from a different standpoint than heretofore.

If the taxing power of the county be not so strictly confined and it may be compelled to resort to other taxing resources or to extend the time of the special levy in order to meet its obligations, then the bonds do not possess the characteristic of non-negotiable instruments. If the bonds are payable at all events and the statements in them as to the laws under which they were issued be only an indication of the source of funds out of which payment is primarily to be made, or are but statements of the transaction which gave rights to the instruments, then they are negotiable.

As we have heretofore pointed out, the terms of Section 157a contemplate a general indebtedness and not a conditional one payable exclusively out of the special tax levy therein permitted to be made—not mandatorily required. The limitations of that section determine the extent but not the nature of the debt to be incurred. The declaration that it shall be in addition to the county's general indebtedness implies that it is of the same kind, for if the payment were restricted to a special non-recurring tax levy it would be of a kind different from that to which it is added. The power to incur an indebtedness in the absence of something indicating the contrary implies the power to assume personal liability and to issue negotiable securities as evidence thereof. Hunter v. City of Louisville, supra; Carter County v. Sinton, 120 U. S. 517, 7 S. Ct. 650, 30 L. Ed. 701; Scotland County v. Hill, 140 U. S. 41, 11 S. Ct. 697, 35 L. Ed. 351; 44 C. J. 1231. And personal liability of the obligor is the test of negotiability.

National Deposit Bank v. Ohio Oil Company, 250 Ky. 288, 62 S. W. (2d) 1048. All obligations incurred under Section 157 of the Constitution to which the indebtedness authorized by Section 157a are added had before its adoption and has since been regarded as general in nature and binding upon the county as a municipal entity.

In Pulaski County v. Eichstaedt, 6 Cir., 110 F. (2d) 79, some bonds of this identical issue were involved. The court regarded the reference to the Constitution and statute to be only the indication of the fund out of which they were to be paid, hence that the bonds were negotiable instruments and the county could not rely upon the defense of defective title of Caldwell & Company. The opinion rests upon Commissioners of Cleveland County v. Bank of Gastonia, 157 N. C. 191, 72 S. E. 996. In that case the legislature, by a special act, had given a certain precinct appropriate powers as a body corporate and politic and authorized it to issue bonds for road construction to the amount of $25,000 and to levy a property tax not in excess of a specified rate, and also a poll tax. The bonds were held to be general and unrestricted obligations of the municipality and the payment not to be confined to a particular fund although a particular fund was provided for their payment. The element of time was not limited, and though the taxing power was limited it was general in the sense that it was all the municipality had.

An amendment to a Constitution is regarded as a codicil to a will—there is no change in the principal instrument except where there is a conflict. There is no conflict between Section 157a and Section 159 of the Constitution. The latter section is as follows:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

And except to permit an additional indebtedness to that prescribed there is no conflict between Sections 157a and 158 of the Constitution, which says:

"Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

In an opinion delivered today, styled Fiscal Court of Estill County v. Debt Commission, 286 Ky. 114, 147 S. W. (2d) 375, following Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192, and overruling certain analogous cases to the contrary, we have held unconstitutional that part of. Section 4307 of the Statutes which provides that road and bridge bonds issued thereunder shall finally mature in not more than thirty years because the legislature has no right to cut down the maximum time of forty years provided in Section 159 of the Constitution. The last of the Pulaski County bonds involved in this case mature in thirty years. Section 159 of the Constitution imperatively requires that a county or taxing district provide for the collection of taxes sufficient to pay its debts. The section is self-executing and is designed to protect bondholders. Commissioners of Sinking Fund v. Zimmerman, 101 Ky. 432, 41 S. W. 428, 19 Ky. Law Rep. 689; E. T. Lewis Co. v. City of Winchester, 140 Ky. 244, 130 S. W. 1094; Fox v. Boyle County, supra; Fulton County Fiscal Court v. Southern Bell T. & T. Co., 285 Ky. 17, 146 S. W. (2d) 15. True, it is said that this payment shall be completed within forty years, but that provision is read with that part of Section 158 of the Constitution which permits the renewal of bonds. The authority to renew or refund road and bridge bonds of the class involved here, with consequent extension of the special tax levy, has been exercised time and again, notwithstanding the bonds themselves and the statutes and orders of the fiscal court under which they were issued called for specified maturities. We have frequently approved such refunding. It is to be noted there is not contained in either Section 157a of the Constitution or Section 4308 of the Statutes, any limitation of time for the levying of the special 20 cent tax.

Since Pulaski County could renew the bonds if not paid at maturity, could use other available resources—at least at its option—and because of the requirements of Section 159 of the Constitution could be mandatorily required to continue the special levy beyond the life of the bonds, we are of opinion that the payment of the

bonds cannot be said to be confined to a particular fund, hence that they are negotiable instruments. That being so, under the Negotiable Instruments Law the defense of fraud and no consideration available against the original purchaser, Caldwell & Company, cannot be invoked against the plaintiffs, now appellees, who it is admitted are holders in due course or bona fide purchasers for value.

We consider the question of invalidity of the bonds because the amount issued exceeded constitutional limitations.

Constitutional and statutory limitations of indebtedness constitute a prohibition of power to issue evidence thereof beyond the amounts prescribed. Therefore, bonds issued in excess of the limitation are void in the hands of any person, whether a\ bona fide holder or not, although they are valid up to the amount allowed by the limiting provisions. If part only of the issue is excessive, then each bond is to be treated as partly valid and partly void and its due proportion to the whole debt attempted to be incurred may be recovered. Boll v. City of Ludlow, 234 Ky. 812, 29 S. W. (2d) 547; Jones, Bonds and Bond Securities, Section 85; McQuillin, Municipal Corporations, Sections 2398, 2443; Cf. Southern Bitulithic Company v. DeTreville, 156 Ky. 513, 161 S. W. 560.

As has been stated, while the debt limitation prescribed by Section 157a of the Constitution is 5 per cent of the assessed valuation of the property subject thereto, yet a county cannot legally assume a debt beyond the amount which the specified 20 cent tax levy will take care of, if that is the sole source of revenue pledged for its payment. It, therefore, becomes also a measure of debt limitation. The net outstanding debt evidenced by unpaid bonds of the first issue of 1916 must, of course, be taken into account.

The vote of the people to assume only the special 20 cent tax with which to pay the bonds and the order of the fiscal court appropriating only those revenues produced by the special tax and fixing the rate of interest at 4¾ per cent establish those factors. The limitation of forty years contained in Section 159 of the Constitution as the maximum maturity of bonds of the

original issue gives the factor of time. If the measurement by this formula shows that the debt which could be liquidated is less than 5 per cent of the assessed valuation of the property, that smaller sum is the limit of a valid debt.

There is a difference of over $1,000,000 between the computations of the defendant and the plaintiffs as to the assessed valuation of the property subject to the tax on July 1, 1930, and a very substantial difference in their respective calculations as to the amount required annually to pay interest and amortize the principal of the bonds during the life of both issues. It is difficult to understand how there could be such great difference in a matter of record and of calculation. If the county's figures are correct, the bond issue was excessive. If those of the plaintiff are correct, the issue is within the limitation of 5 per cent. The circuit court accepted the latter basis and figures and held there was no over issue, and there was abundant evidence to support that conclusion. There was no consideration given to the other measurement—what amount of bonds carrying 4¾ per cent interest can be liquidated by a 20 cent tax for 40 years calculated on the assessed value of taxable property as of July 1, 1930. The case is remanded that it may be done. If it is found that the issue of $280,000 is excessive on this basis, the court should adjudge the excess void and reduce plaintiffs' claims proportionately, rendering judgment therefor and making appropriate orders for its enforcement.

It should be stated that payment of interest on all the bonds does not have the effect of ratifying bonds issued beyond the lawful limit, for a ratification can have no greater force than a previous authority and the county cannot ratify what it could not have authorized. Daviess County v. Dickinson, 117 U. S. 657, 6 S. Ct. 897, 29 L. Ed. 1026; Green County v. Shortell, 116 Ky. 108, 75 S. W. 251, 25 Ky. Law Rep. 357.

Judgment reversed.

Whole court sitting, except Judge Perry.