## Tandy's Ex'rs v. Carlisle County

Feb. 29, 1944.

744

Woodward, Dawson & Hobson, Franklin P. Hays and H. W. Linton for appellants.

M. C. Anderson and T. M. Collins for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Edward R. Tandy died testate May 22, 1941, a resident of Christian county. In his will he named Charles F. McKee and Louise Breathitt his executor and executrix, and on October 22, 1942, they brought an action in the Carlisle circuit court against Carlisle county to recover the principal of four road and bridge bonds amounting to $4,000, theretofore issued by the county, and interest thereon from September 1, 1932. The bonds were issued in 1924, pursuant to the provisions of section 157a of the Kentucky Constitution, and matured September 1, 1933. An answer in four paragraphs was filed by the county. The first paragraph denied certain facts alleged in the petition not material to plaintiffs' cause of action, the second was a plea of the 5-year statute of limitations, the third was a plea of the 3-year statute of limitations, and the fourth was a plea of laches. A general demurrer to the answer and each paragraph thereof was filed. The court overruled the demurrer, the plaintiffs refused to plead further, and the petition was dismissed.

There is no question as to the validity of the bonds.

The county in its answer stated affirmatively that the election to authorize the bonds was properly held, and that they were duly and regularly issued. The defense interposed by paragraph 2 of the answer is based on the theory that the bonds are negotiable instruments, and having been negotiated before maturity were placed on the footing of bills of exchange, with the result that the 5-year statute of limitation applies. The pertinent part of the statute reads: "The following actions shall be commenced within five years after the cause of action accrued: * * * (8) An action upon a bill of exchange, check, draft or order, or any indorsement thereof, or upon a promisory note, placed upon the footing of a bill of exchange." KRS 413.120. The bonds are negotiable instruments. Pulaski County v. Ben Hur Life Association, 286 Ky. 119, 149 S. W. (2d) 738. It does not follow, however, that by negotiation they are placed on the footing of bills of exchange within the meaning and intent of subsection (8) of section 413.120 of the Kentucky Revised Statutes, and that the 5-year statute and not the 15-year statute of limitations applies. The cases relied on by appellee involved promissory notes of individuals and corporations. Our limitations statutes distinguish between ordinary promissory notes and bonds. KRS 413.090 provides that "the following actions shall be commenced within fifteen years after the cause of action first accrued: * * * (2) An action upon a recognizance, bond or written contract * * * (4) An action upon * * * a bond or obligation for the payment of money or property or for the performance of any undertaking." This statute covers promissory notes and bonds, and section 413.120, which prescribes the actions to be brought within five years specifically mentions a promissory note placed upon the footing of a bill of exchange but fails to mention bonds. Obviously, the Legislature intended to make a distinction between promissory notes and bonds for limitation purposes. Section 413.120 re-enacted section 2515 of Carroll's Kentucky Statutes, and section 413.090 re-enacted section 2514 of Carroll's Kentucky Statutes, which was amended and re-enacted in 1918 after the enactment of section 2515 and the Negotiable Instruments Law which placed bonds, as far as respects negotiability, upon the same footing as promissory notes. The three acts were re-enacted as parts of the same act when the Kentucky Revised Statutes were

adopted in 1942. At common law there is a well-recognized difference between a bond as evidence of debt and a simple contract. The distinguishing characteristic of a bond at common law is the presence of a seal which imports a solemnity greater than that present in simple contracts. Although the presence of a seal on a bond is no longer required, and its legal effect may be the same as that of a simple contract, yet a bond is a distinct form of instrument and the term is frequently distinguished from terms describing other forms of written instruments. That the Legislature intended to make a distinction between bonds and promissory notes when it enacted the limitations statutes, however, is not open to debate. The precise question was decided in Gayle v. Greasy Creek Coal & Land Company, 249 Ky. 251, 60 S. W. (2d) 599, 602. There the corporation had issued bonds secured by a mortgage on its real estate. Wheeler Boone acquired title to the bonds from the original holders for a valuable consideration. Gayle obtained a title bond to the mortgaged property after the bonds were issued, and sought to defeat Boone's claim to a prior lien on several grounds, one being that the bonds were barred by the 5-year statute of limitations, then section 2515 of Carroll's Kentucky Statutes. On this point, the court said: "It is appellant's contention that the five-year statute of limitation controls. Boone's cause of action on the bonds. This contention is predicated upon the theory that the bonds are of that character of negotiable instrument embraced by the language of section 2515. Section 2514 controls actions on bonds of the type of those here involved."

With this construction of the Statutes before it, the Legislature re-enacted sections 2514 and 2515 of Carroll's Kentucky Statutes without changing the language with respect to bonds and notes.

We are likewise of the opinion that the 3-year statute of limitations has no application. This statute appears in the Kentucky Revised Statutes as part of section 413.110, but was originally enacted in 1938 as an amendment to section 2514, Carroll's Kentucky Statutes, by adding thereto the following:.

"Provided, however, that a cause of action existing against any county, by virtue of any bonded obligation for the payment of money by any county, after

the said county shall have in good faith offered to redeem such obligations, which shall have matured, by the payment in full of all principal and interest due, shall expire and become ineffective at the end of three (3) years thereafter or at the end of three (3) years from the effective date of this Act, whichever be the longer period." Acts 1938, First Extraordinary Session, Chapter 31, Sec. 11.

It was part of an act creating a county debt commission, providing for the approval of county bonds, for assistance of the State Local Finance Officer in formulating a plan for reorganizing the county's debt structure upon application by the fiscal court of the county, and regulating the issuance or reissuance and sale of county bonds. The purpose of the act was to enable counties which were in financial difficulties because of large bond issues, some of which were in default, to improve their financial structures. The interest was accumulating on the bond issues in default, and the amendment to section 2514 of Carroll's Kentucky Statutes was intended to stop the running of interest and to force the holders of county bonds to present them for payment. In many instances both bonds and interest had been in default for many years.

The bonds in the instant case provided that principal and interest were payable at the Chemical National Bank in New York. In paragraph 3 of its answer the county alleged that it offered to redeem the bonds and coupons attached thereto by placing a sufficient sum of money in the Chemical National Bank of New York for the purpose of paying and satisfying same. There is no allegation that any offer was ever communicated to the holder of the bonds. In view of the purpose of the 1938 amendment to section 2514 of Carroll's Kentucky Statutes, something more than the mere deposit of money with the bank named as the place of payment was meant by the phrase "after the county has in good faith offered to redeem such obligations." The statute means that the offer must be communicated to the holder of the bonds or his agent. The Chemical National Bank was the agent of the county, not the holder of the bonds.

In paragraph 4 of its answer the county alleged that the holder of the bonds in question failed to present them for payment at the Chemical National Bank of

New York when they were due, and because of such failure the defendant was induced to and did use the money for the purpose of discharging other good and valid obligations of Carlisle county.

Little need be said concerning the plea of laches. Appellants insist that the demurrer to paragraph 4 of the answer should have been sustained because the defense of laches may not be invoked in a common law action, but, aside from that, the facts alleged do not constitute laches. The appellee was not prejudiced by the failure of the holder of the bonds to present them for payment when due or by his delay in instituting suit for their collection. The money spent by the county for other purposes had been collected and appropriated for the specific purpose of paying the principal and interest on the bonds sued on, and it was the duty of the county to preserve the fund for that purpose until the holder's right of action on the obligation had been barred by limitations. We do not mean by what has been said that the county is foreclosed from contesting the payment of interest subsequent to September 1, 1933, the maturity date of the bonds. Ordinarily, tender which is not kept good does not stop interest, but "in the case of certain debts, such as loans effected by municipalities and corporations of large capital, which are payable at a fixed and known place of payment and at a fixed period, at which place and time the creditor is to present his evidence of debt and receive payment, interest will stop from that moment, regardless of whether the bond or other evidence of indebtedness is presented." 30 Am. Jur., Interest, Sec. 52. If the county actually had on deposit with its agent, the Chemical National Bank of New York, on September 1, 1933, an amount sufficient to pay the bonds in question, together with the interest then due, the running of interest stopped until the bonds were presented for payment and payment was refused.

The judgment is reversed, with directions to sustain the demurrer to the answer and each paragraph thereof.